In re **INTERNATIONAL ADMINISTRATIVE SERVICES, INC.,** Debtor.

**Bankruptcy No. 96–03950–6J1.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

June 6, 1997.

*ORDER DENYING EMERGENCY MO-TION TO VACATE OR MODIFY OR-DER AUTHORIZING GUERNSEY LITIGATION AND FOR A PRELIMI-NARY INJUNCTION AGAINST THE UNSECURED CREDITORS COM-MITTEE*

KAREN S. JENNEMANN, Bankruptcy Judge.

This case came on for hearing on April 1, 1997, on the emergency motion filed by Charles J. Givens, Jr. ("Givens"), first, to vacate or modify this Court's prior order authorizing the creditors' committee (the "Committee") to pursue claims against Giv-ens and other defendants before the Royal Court of Guernsey (the "Guernsey Court") and, second, to enjoin the Committee from pursuing avoidance claims against Givens in any forum other than before this Court (the "Motion") (Doc. No. 262). The Motion raises numerous legal issues all questioning the va-lidity of the Committee's action in pursuing claims against Givens and other third parties to avoid transfers of property of the debtor, International Administrative Services, Inc. (the "Debtor"), to various accounts located in the Bailiwick of Guernsey, a small island located in the English Channel which is a British crown dependency ("Guernsey"). Af-ter reviewing the pleadings, the arguments of the parties, and the case law, the Motion is denied.

*Background.* The Debtor is in the business of providing financial products and services to consumers which are designed to help consumers manage their finances and to as-sist them in making future financial deci-sions. In exchange for monthly dues, each of the Debtor's several thousand members re-ceives a monthly magazine entitled "Success Insight" and each has access to IAS's finan-cial hotline which is staffed by financial ad-visors trained to answer member questions.

Givens is the sole shareholder of the Debtor. He formed the Debtor, formerly known as the Charles J. Givens Organiza-tion, Inc., in 1986 and served as an officer and director of the Debtor until some time in 1992. He is a dynamic speaker and, dur-ing the early years of the Debtor's opera-tions, travelled the country presenting semi-nars and proclaiming the Debtor's message of financial planning to consumers. After he resigned his management role in 1992, a series of officers and directors managed IAS' operations. The Debtor ultimately filed a voluntary petition seeking to reorga-nize its financial affairs under chapter 11 of the Bankruptcy Code on June 21, 1996 (Doc. No. 1). The Debtor has acted as a debtor-in-possession managing its operations during the Chapter 11 case.

*Committee Appointment and Investiga-tion.* On July 29, 1996, the United States Trustee appointed the Committee to repre-sent the interests of creditors (Doc. No. 42).

Shortly thereafter, the Debtor and the Committee agreed that, due to the complex relationship between the Debtor and Givens, the Debtor would relinquish to the Committee its right and duty to pursue any fraudulent transfer or other avoidance claim against Givens or any other third party. On September 20, 1996, an order was entered approving this agreement (Doc. No. 95). As such, the Committee essentially is acting as a trustee on behalf of the estate in pursuing the Debtor's avoidance claims. 11 U.S.C. § 1107 (1997).

In accordance with their legal duty to recover all available assets, the Committee conducted a comprehensive investigation into the extremely complex web of financial transactions between the Debtor and insiders of the Debtor including Givens, numerous corporate affiliates of the Debtor, and various other third parties. As a result of this investigation, the Committee identified substantial funds transferred from the Debtor's accounts into various financial accounts located in Guernsey (the "Guernsey Funds"). Givens may claim some interest in these funds. The Committee claims, but certainly has not proven, that the Guernsey Funds belong to the Debtor and were fraudulently transferred by Givens and other third parties. The Committee concluded that a legal action in Guernsey was necessary to freeze assets located in Guernsey and to attempt to recover such assets for the benefit of the estate.

*Committee's Motion.* On January 16, 1997, the Committee filed the Emergency Motion for Authorization to Institute Proceedings in Guernsey, to File Affidavit, to Give Undertakings and to File Under Seal (the "Committee's Motion") (Doc. No. 207A). Because Givens or his associates previously had refused to cooperate with the Committee and deliberately had interfered with the Committee's investigation by destroying documents, the Committee was concerned that, if Givens were given notice of the Committee's Motion, Givens or his associates would transfer the Guernsey Funds from Guernsey. Accordingly, the Committee requested that the hearing on the Committee's Motion be held without notice to Givens or other third parties.

In light of the representations made by Committee's counsel, the Court granted the Committee's request. The pleadings were sealed, and a hearing on the Committee's Motion was held on January 17, 1997. Representatives of the Debtor, the Committee, and the United States Trustee were present. No notice of the hearing was provided to Givens or the other defendants. The proceeding was transcribed and is part of the official record of this case.

At the hearing, the Committee requested permission to file an action before the Guernsey Court to pursue certain legal remedies uniquely available under Guernsey law. Specifically, the laws of Guernsey permit the Guernsey Court to freeze assets located in its jurisdiction pending resolution of the competing claims, to permit discovery from third parties, and to provide for the seizure of records. The Committee also estimated that the Guernsey Court would require a bond of approximately $35,000 to cover the costs of the defendants and the reasonable expenses incurred by third parties. The Committee requested that the Debtor directly pay this cost. The Debtor consented to the payment of this amount and, indeed, supported the relief requested in the Committee's Motion. Lastly, the Committee anticipated the need to file an affidavit with the Guernsey Court reciting the conclusions reached during the Committee's financial investigation. A proposed, but unsigned, version of such an affidavit was attached to the Committee's Motion.

After the hearing, the Court granted the Committee's Motion and entered an Order Granting Motion for Authorization to Institute Proceedings in Guernsey ("Order Authorizing Guernsey Action") (Doc. No. 208A). The Court further specifically found that, based upon the allegations in the Committee's Motion, a substantial risk existed that the records and funds sought to be obtained by the Committee would "disappear if notice of the Emergency Motion or this Order were known to the prospective defendants in Guernsey."

The Order Authorizing the Guernsey Action permitted the Committee to file an action in Guernsey to attempt to freeze and

locate assets of this Chapter 11 estate utilizing the laws of Guernsey and to take whatever actions were necessary or appropriate under Guernsey law to pursue those claims, including the payment of necessary fees and the filing of a supporting affidavit. The Order Authorizing the Guernsey Action did not seize the assets of Givens or any other party and did not direct the Guernsey Court to take any such action but merely authorized the Committee to proceed in a foreign jurisdiction to obtain relief over property which is located in that foreign jurisdiction and which allegedly belongs to this Debtor.[1]

*Guernsey Order.* On January 22, 1997, the Guernsey Court issued an order against Givens and seven other defendants: 1) Montrain Services Limited; 2) Eurokredit Finance BV; 3) Paul Mason; 4) Fort Group Holdings Limited; 5) Island Management Finance Limited; 6) Regent Nominees Limited; and 7) Sloane Nominees Limited (collectively, including Givens, the "Guernsey Defendants"). Besides Givens, only one of the seven defendants, Island Management Finance Limited ("IMF"), has any contact with the United States, or has participated in this chapter 11 case.

The order of the Guernsey Court (the "Guernsey Order") prohibits Givens as well as some of the other Guernsey Defendants from removing or transferring any assets from Guernsey (Paragraph 1.1). The Guernsey Order does *not* purport to restrict the Guernsey Defendants' use of property located anywhere outside of Guernsey. The Guernsey Order further permits the release of any restricted funds for the payment of reasonable attorneys' fees and other business expenses provided reasonable attorneys' fees and other business expenses provided that

the defendant discloses the source of the funds (Paragraph 6.2). Lastly, the Guernsey Order is subject to variance or discharge upon the request of any party and upon 24 hours written-notice to the Committee's advocates in Guernsey (Paragraph 9). In sum, the Guernsey Order freezes assets of Givens located in Guernsey until the issues are judicially resolved or an emergency request for a variance is made.[2]

*Givens' Motion.* On April 1, 1997, Givens filed the instant Motion requesting this Court to vacate or modify the Order Authorizing Guernsey Action and to enjoin the Committee from continuing with the action pending in Guernsey against Givens and from instituting any new proceedings against Givens before any court other than this Court. In support of his Motion, Givens raises numerous legal arguments. However, succinctly stated, Given's primary contention is that this Court is the only appropriate forum to resolve the Committee's claims. He also argues that the Order Authorizing the Guernsey Action is analogous to an order seizing his property. As such, Givens argues that his constitutional due process rights were violated because the order was entered without notice to him and an opportunity to be heard prior to the seizure.

Although Givens has raised many subsidiary issues, for the purpose of ruling on his Motion, the primary issue is whether this Court erred, for any reason, in deferring jurisdiction to the Guernsey Court to allow the Committee to institute a legal action against the Guernsey Defendants, including Givens, in Guernsey. If the Court did not err, the next issue is whether Givens, an interest holder of the Debtor who has trans-

1. Subsequently, the Committee discovered additional *assets of the Debtor transferred by Givens* or other third parties to a second foreign locale—the Isle of Man. On March 31, 1997, the Committee filed a second similar motion, the Emergency Motion for Authorization to Institute Substantive Proceedings in Guernsey, to Institute *Proceedings in the Isle of Man, to File Affidavit,* to Give Undertakings, and to File this Motion Under Seal (Doc. No. 391). On April 8, 1997, an order was entered granting this second motion (Doc. No. 394). The reasons why the Court granted the second motion of the Committee are identical to the reasons why the Court granted

the Committee's first motion and why Givens' *instant Motion is denied.*

2. Givens alleges that the Guernsey Order violates his right to free speech. However, the only provision of the Guernsey Order which affects Givens' right to communicate with third parties is paragraph 8.2. which provides that the Guernsey Defendants must keep the existence and content of the Guernsey Order confidential. Givens is free to talk to anyone about anything other than the reasonable confidentiality limitation contained in the Guernsey Order.

ferred property of the Debtor to Guernsey is entitled to prevent the Committee, who, in turn, is charged with pursuing actions to avoid fraudulent transfers, from filing actions against him in Guernsey.

The facts involved are unusual. No case was located which directly addressed the propriety of a shareholder trying to stop a creditor's committee from pursuing assets of the debtor's estate located in a foreign country. Rather, the cases cited by the parties or otherwise reviewed all addressed the ability of a bankruptcy court to exercise extraterritorial jurisdiction. No case involved the issue of a bankruptcy court voluntarily ceding jurisdiction to an appropriate foreign court at the request of a creditors' committee searching for assets of a chapter 11 debtor. As such, the case law is only minimally helpful. The majority of the issues raised by Givens' Motion appear to be issues of first impression.

■ *Extraterritorial Jurisdiction of the Bankruptcy Court.* A bankruptcy court clearly has some degree of extraterritorial jurisdiction over property of a debtor's estate. Section 541 of the Bankruptcy Code provides that property of the estate is comprised of property "wherever located and by whomever held." 11 U.S.C. § 541 (1997). Congress intended § 541 to be as inclusive as possible and all encompassing. Lawrence P. King et al, Collier on Bankruptcy ¶ 541.01 (15th ed.1997). Therefore, property of the debtor that is located outside of the United States constitutes property of the estate, and the bankruptcy court may exercise jurisdiction over such property. *Deak & Co. v. Soedjono (In re Deak)*, 63 B.R. 422, 426 (Bankr.S.D.N.Y.1986).

■ However, practical limitations exist to this broad definition of property of the estate at least in connection with the enforcement of jurisdiction over property located in foreign countries. Ved P. Nanda and Ralph B. Lake, ed., The Law of Transnational Business Transaction § 11.04 (1996). A trustee or debtor-in-possession cannot exercise control over assets in a foreign jurisdiction that are property of the estate without first obtaining recognition and permission from the court of the foreign jurisdiction in which the assets are located. *Id.* Whether such permission is possible will depend upon the law of the foreign jurisdiction. *Id.* Therefore, although an American bankruptcy court may have the authority under the law of the United States to exercise *in rem* jurisdiction over property of a debtor's estate located in a foreign country, the bankruptcy court practically lacks the power to enforce such jurisdiction without the recognition and assistance of the courts in the foreign country.

■ Accordingly, when property is beyond the jurisdictional reach of the court, as is the case with the Guernsey Funds, the bankruptcy court has no practical control directly over the property. The bankruptcy court retains the power to exercise *in personam* jurisdiction only over parties who have sufficient minimum contacts with this country. *In re A & W Publishers, Inc.*, 39 B.R. 666, 667 (S.D.N.Y.1984) ("a minimum contacts test applies in bankruptcy to protect foreign corporations [persons] against being subject to jurisdiction in this country without due process of law"). A bankruptcy court which has sufficient *in personam* jurisdiction over a party can direct that person to transfer or return property located in a foreign country to the United States. *Deak*, 63 B.R. at 422, 430–435. However, if no *in personam* jurisdiction exists, the bankruptcy court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign courts.

■ In this case, the Court has *in personam* jurisdiction over Givens and perhaps one of the other Guernsey Defendants, IMF. However, as to the remaining six defendants who have not appeared in this Chapter 11 case and who have no known contacts with the United States, the Court lacks the ability to require them to return property located in Guernsey which may be part of this Debtor's estate or to otherwise direct their actions.

*Concurrent Jurisdiction.* Courts in every country are authorized to resolve issues relating to property located within their territorial jurisdiction. However, occasionally, courts of two or more nations legitimately may have jurisdiction to decide an issue involving conduct that falls within the reach of

their prescribed jurisdictional powers. *In re Maxwell Communication Corp.*, 170 B.R. 800, 815 (Bankr.S.D.N.Y.1994). In that instance, the courts have concurrent, not exclusive, jurisdiction.

■ Here, this Court clearly has jurisdiction over Givens, the Debtor, possibly IMF, and all parties in interest involved in this Chapter 11 case. This Court also has jurisdiction over property of the Debtor's estate, wherever located, including, arguably, the Guernsey Funds. Similarly, the Guernsey Court also has jurisdiction over the Guernsey Funds. Therefore, both this Court and the Guernsey Court have concurrent jurisdiction over the Guernsey Funds. No direct or binding authority exists to guide this Court in determining the preferred forum; however, both the standard of reasonableness, as articulated by the Bankruptcy Court in the Maxwell decision, and the criteria set forth in Section 304(c) of the Bankruptcy Code offer some assistance in deciding which court is the better court to hear the Committee's claims.

■ When concurrent jurisdiction exists, both courts should evaluate the interests of the competing parties applying a standard of reasonableness. *Maxwell*, 170 B.R. at 815. The reasonableness inquiry turns on a number of factors that include:

(a) the extent to which the activity takes place within the territory or has substantial, direct and foreseeable effect upon or in the territory;

(b) the connections between the regulating nation and the person principally responsible for the activity to be regulated, or between the nation and those whom the regulation is designed to protect;

(c) the character of the activity to be regulated, the importance of the regulation to the regulating nation, the extent to which other nations regulate such activities, and the degree to which the desirability of such regulation is generally accepted;

(d) the existence of justified expectations that might be protected or hurt by the regulation;

(e) the importance of the regulation to the international, political, legal or economic system;

(f) the extent to which the regulation is consistent with the traditions of the international system;

(g) the extent to which another nation may have an interest in regulating the activity; and

(h) the likelihood of conflict with another nation.

*Id., citing,* Restatement of Foreign Relations § 403.

■ If the interest of one country is greater, the second country should consider deferring jurisdiction to the other. Restatement of Foreign Relations § 403. In keeping with this principle, § 305(a) of the Bankruptcy Code allows a bankruptcy court to dismiss an ancillary proceeding if a foreign proceeding is pending and the factors set forth in § 304(c) warrant such relief. Lawrence P. King, ed., Collier on Bankruptcy ¶ 304.08 (15th ed.1997). Similar to the standard of reasonableness discussed above, Section 304(c) of the Bankruptcy Code outlines several guidelines for the bankruptcy court to consider when faced with an ancillary proceeding filed in this country which is related to a proceeding pending in a foreign country:

[T]he court shall be guided by what will best assure an **economical and expedient administration** of such estate, consistent with-

(1) just treatment of all holders of claims against or interests in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of preferential or fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;

(5) comity; and

(6) if appropriate, the provision of an opportunity for a fresh start for the

individual that such foreign proceeding concerns.

11 U.S.C. § 304 (1997) (emphasis added)

 Applying, by analogy, these guidelines, the Guernsey Court is the better forum to exercise jurisdiction over the Guernsey Funds. The money is located in Guernsey. Although no significant national or international principle is at issue, Guernsey has a greater interest in regulating entities doing business and conducting other financial activities on its shores than does this Court. Givens or entities controlled by him chose to transfer the funds of the Debtor to Guernsey. Givens, not the Committee, selected the forum by choosing to transfer the Guernsey Funds to a foreign country.[3]

Moreover, the deferral of jurisdiction by this Court to the Guernsey Court would allow for the most economic and expedient administration of the estate as envisioned in § 304 of the Bankruptcy Code. The Committee has asserted that the Guernsey Funds are held by foreign entities over whom this Court has no *in personam* jurisdiction but over whom the Guernsey Court can exercise both *in rem* and *in personam* jurisdiction. Only the Guernsey Court can enter a final order as to the Guernsey Funds[4] as well as to the Guernsey Defendants. To bifurcate the proceeding between the parties over whom this Court lacks jurisdiction and Givens, over whom it has *in personam* jurisdiction, would only result in duplicative proceedings, a waste of judicial energy, and an increase in the cost of the litigation to the parties. Guernsey can finally resolve the issues; this Court cannot. The Guernsey Court is the most efficient and economical court to resolve the Committee's claims.

The doctrine of comity, one of the factors set forth in Section 304(c) of the Bankruptcy Code, also dictates that Guernsey is the preferred forum. No law has effect of itself beyond the limits of the sovereignty from which its authority is derived. *Hilton v. Guyot,* 159 U.S. 113, 16 S.Ct. 139, 40 L.Ed. 95 (1895). Instead, the doctrine of comity requires a court to refrain from exercising jurisdiction under certain circumstances in deference to the laws and interests of another country. *Sequihua v. Texaco, Inc.,* 847 F.Supp. 61, 63 (S.D.Tex.1994).

> Comity in the legal sense, is neither a matter of absolute obligation on the one hand, nor of mere courtesy and good will upon the other. But it is the recognition which one nation allows within its territory to the legislative, executive and judicial acts of another nation, having due regard both to the international duty and convenience, and to the rights of its own citizens or of other persons who are under the protections of its laws.

*Hilton,* 159 U.S. at 163–64, 16 S.Ct. at 143.

Here, Guernsey has a significant interest in regulating business activities and parties conducting financial transactions within its territorial boundaries. This Court should honor the interest of Guernsey, if possible, and defer jurisdiction to the Guernsey Court to resolve the issues directly relating to property located on its shores. The principles of comity weigh in favor of this Court allowing the Guernsey Court to proceed.

Lastly, the doctrine of *forum non conveniens* does not prevent the Guernsey Court from resolving the Committee's claims. Under this doctrine, the central focus is, as the name connotes, convenience. *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 249, 102 S.Ct. 252, 262–63, 70 L.Ed.2d 419 (1981). Convenience to the parties and the witnesses is

---

**3.** Givens argues that he does not have sufficient minimum contacts with Guernsey. If that is the case, Givens can raise the lack of jurisdiction to the Guernsey Court which is capable of deciding the issue. If Givens is correct, the Guernsey litigation can proceed against the remaining seven Guernsey Defendants.

**4.** The bankruptcy court has original but not exclusive jurisdiction over fraudulent transfer claims. 28 U.S.C. § 544. Although such claims may be litigated in the bankruptcy court, the parties also can litigate the claims in a court with concurrent jurisdiction. *See, Tabas v. Gigi Advertising Partnership (In re Kaufman & Roberts, Inc.)* 188 B.R. 309, 314 (Bankr.S.D.Fla.1995). Therefore, fraudulent transfer claims may be pursued in the alternative forum *or* in an adversary proceeding in the bankruptcy court. *Id.* With respect to the fraudulent transfers claims asserted against Givens, it is clear that this court has original but not exclusive jurisdiction. 28 U.S.C. § 1344 (1997).

paramount. Abstention typically is appropriate if the plaintiff's chosen forum would impose a heavy burden on a defendant and if the plaintiff cannot offer any specific reasons supporting the choice of forum. *Id.* at 250, 102 S.Ct. at 263. The fact that the forum is outside of the United States is irrelevant as long as requisite procedural safeguards exist. *Id.* The alternative forum need not offer the same benefits as the American system. *Id.*

In this case, the forum in Guernsey admittedly is not convenient either to the Committee or to Givens. However, the Committee can offer a very good reason for choosing the Guernsey Court. The Guernsey Funds are located in that jurisdiction. Guernsey is the only forum in which the Committee can obtain jurisdiction over all eight of the Guernsey Defendants. Moreover, fairness dictates that Givens, who knowingly transferred the funds at issue to Guernsey, should travel to Guernsey to assert a claim to those funds. As such, the additional inconvenience caused to Givens is immaterial in light of the fact that the Committee, in an attempt to gain complete relief, had little choice in the selection of the forum.[5]

Givens argues that deferral of jurisdiction by this Court to the Guernsey Court somehow violates his federal, statutory, and constitutional rights. However, he fails to provide any basis for this sweeping argument. To the extent that Givens is subject to the jurisdiction of the Guernsey Court, it is solely due to his own actions in transferring the Guernsey Funds. To extend Givens' argument to its logical extension, Givens is contending that American citizens can participate in international transactions and defraud citizens of foreign countries indiscriminately but can only be sued in the United States. Such a conclusion is contrary to any notion of international comity.

Moreover, Givens has failed to establish that the law of Guernsey fails to provide

sufficient procedural safeguards to protect his interest. Guernsey, as a dependency of the British Crown, has laws that are similar, although certainly not identical, to those of the United States. The one order entered by the Guernsey Court indicates that the Guernsey Defendants can receive an emergency hearing to vary or discharge the terms of the Guernsey Order upon 24 hours written notice to the Committee. This type of relief indicates that the procedures, although different from the United States, are sufficiently fair and reasonable to support the Committee's choice of forum. Accordingly, for all of these reasons, this Court has reviewed and again concludes that the proper forum to resolve the Committee's claims is the Guernsey Court.

*Due Process.* Givens next argues that the Order Authorizing the Guernsey Action should be vacated because his constitutional rights to due process were violated. Specifically, Givens argues that he was not provided with any notice of the hearing on the Committee's Motion or an opportunity to be heard prior to the entry of the Guernsey Order.

■ Givens' argument initially fails because he was not deprived of any property interest or right as a result of the Order Authorizing the Guernsey Action. The effect of this order was to authorize the Committee to file an action in Guernsey and to allow them to file the necessary pleadings and pay the necessary fees. The Order Authorizing the Guernsey Action did not seize Givens' property or direct the Guernsey Court to take any action. As such, the Order Authorizing the Guernsey Action did not deprive Givens of his right to due process.

■ However, for the purpose of discussion, the Court will assume that the effect of the order granting the Committee's Motion indirectly did result in the entry of the

---

**5.** Similarly, the "first to file" rule does not preclude deferral of jurisdiction to the Guernsey Court. This judicial rule was established to provide that the first forum selected by any of the parties, including the plaintiff, was determinative of the forum for all related issues between the parties. However, the rule is discretionary, not binding. Therefore, even though the Committee

previously has filed an adversary proceeding against Givens (but none of the other Guernsey Defendants) in connection with this Chapter 11 case, for the reasons discussed above, the better forum to finally and completely resolve the Committee's issues is the Guernsey Court. *See, Tingley Systems, Inc. v. Bay State HMO Management, Inc.,* 833 F.Supp. 882, 887 (M.D.Fla.1993).

Guernsey Order, albeit by the Guernsey Court, which froze assets of the Guernsey Defendants located in Guernsey. Prior to depriving a party of an interest in property, notice and a hearing generally are required before property may be seized. However, exceptions are allowed when the moving party can show exigent or extraordinary circumstances. *U.S. v. James Daniel Good Real Property*, 510 U.S. 43, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993); *Calero–Toledo.v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 678, 94 S.Ct. 2080, 2089, 40 L.Ed.2d 452 (1974). The postponement of a hearing is appropriate if circumstances justify a special need for prompt action. *Calero–Toledo*, 416 U.S. at 678, 94 S.Ct. at 2089, *citing, Fuentes v. Shevin*, 407 U.S. 67, 91–92, 92 S.Ct. 1983, 1999–2000, 32 L.Ed.2d 556 (1972). Further, when only property rights are involved, it is sufficient that at some stage there is the opportunity for a hearing and a judicial determination. *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 612, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974). If an opportunity is subsequently given for the ultimate judicial determination of liability, then mere postponement of a hearing is not a denial of due process. *Id.* at 611, 94 S.Ct. at 1902.

In this case, the Court determined that sufficient exigent and extraordinary circumstances existed to justify a hearing on the Committee's Motion without notice to Givens. Specifically, the Committee demonstrated a pattern of lack of cooperation by Givens during their investigation as well as asserted that Givens had deliberately destroyed necessary financial documents. The Committee legitimately was concerned that if notice of the hearing were given to the Guernsey Defendants more documents would be destroyed and the Guernsey Funds transferred. The Court concluded that the Committee's concerns were valid and proceeded with the hearing.

As such, the pleadings were sealed until the Guernsey Order was entered which froze, but did not seize, the assets of the Guernsey Defendants located in Guernsey. The Guernsey Court merely preserved the status quo until a final judicial determination of the Committee's claims is reached. The provisions of the Guernsey Order provided that the Guernsey Defendants could request an emergency hearing to vary the terms of the order upon 24 hours notice to the Committee. Givens can obtain such a hearing within 24 hours before the tribunal who actually froze the assets, the Guernsey Court. To date, Givens has failed to exercise this ability.

Due process considerations provide that a party is not entitled to notice of a hearing to freeze assets if sufficient exigent circumstances are present. In this case, sufficient extraordinary circumstances were demonstrated by the Committee. However, because no prior notice was given, Givens is entitled to an opportunity for a hearing and a judicial determination on the legitimacy of the freezing by the court entering the applicable order. If the opportunity for such a hearing is provided, postponement of a hearing is not a denial of a party's due process. Givens has had an opportunity to raise any concerns regarding the Guernsey Order. He has not exercised that right. As such, he cannot complain that his due process rights were violated even assuming American constitutional law standards were applicable.

*Applicability of the Rosen Opinion.* Givens also argues that the Eleventh Circuit's decision in *Rosen v. Cascade International, Inc.*, 21 F.3d 1520 (11th Cir.1994), requires a modification of the Order Authorizing Guernsey Action. The facts of *Rosen* are easily distinguishable from the facts of this dispute. In *Rosen*, the plaintiff was seeking a money judgment, and the district court entered an order granting the plaintiff's application for a preliminary injunction freezing the debtor's assets until the dispute was resolved. Here, the Committee is not seeking a money judgment but equitable relief. The Committee contends that the Guernsey Funds belong to the Debtor, not the Guernsey Defendants, and seeks to avoid the fraudulent transfer. As such, *Rosen* on its face does not apply.

Further, the Eleventh Circuit Court of Appeals in *Rosen* merely stated that federal courts cannot fashion new pre-judgment seizure remedies but instead must rely upon the attachment and seizure remedies of the applicable forum. In this case, the applicable forum is Guernsey. The pre-judgment pro-

cedures of that forum were properly followed. The decision of *Rosen* simply is not applicable in resolving the issues raised by Givens' Motion.

*Conclusion.* Upon reexamination, this Court again has determined that the Guernsey Court is better suited to resolve the Committee's claims to the Guernsey Funds. The Court reaches this conclusion with the full awareness of the unusual nature of its decision to defer jurisdiction over significant issues raised in this chapter 11 case to a court in a distant locale. Certainly, no order previously issued by this Court was designed to predispose the Guernsey Court in any way. Rather, this Court is once again merely deferring to the Guernsey Court to apply its own procedures in resolving the dispute between the parties.

However, to the extent that future issues arise which raise unique issues of American law, this Court, acting in the spirit of comity and cooperation, is more than willing to assist her sister court in Guernsey, if asked. Moreover, if, as the litigation progresses, the Guernsey Court independently determines it appropriate to return some or all of the pending issues to the United States, this Court would willingly consent.

To date, the Guernsey Court has acted fairly and reasonably, and neither this Court nor the Guernsey Court has taken any action to deprive Givens of his constitutional rights to due process or any other procedural claim to which he is entitled. As such, the Order Authorizing the Guernsey Action was properly entered. No modification or vacation of the prior order is necessary. Givens has failed to establish any basis to enjoin the Committee from pursuing avoidance claims against him in Guernsey.

Accordingly, it is ORDERED that the Motion is denied.