**In re Paolo GUCCI, et al., Debtors.**

**Frank G. Sinatra, etc., Plaintiff–Appellee,**

**v.**

**Alessandra Gucci, at ano., Defendants–Appellants.**

**No. 03 Civ. 4484(LAK).**
**Adversary No. 00–2373A(CB).**
**Bankruptcy No. 94 B 40614(CB).**

United States District Court,
S.D. New York.

May 7, 2004.

Michael S. Devorkin, Golenbock, Eise-man, Assor, Bell & Peskoe, New York City, for Plaintiff–Appellee.

Norris D. Wolff, Edward P. Grosz, Kleinberg, Kaplan, Wolff & Cohen, P.C., New York City, for Defendants–Appellants.

## MEMORANDUM OPINION

KAPLAN, District Judge.

This is an appeal from a judgment of the Bankruptcy Court in favor of plaintiff-appellee, the chapter 11 trustee of the estate of Paolo Gucci, declaring void *ab initio* the registration of a judgment lien in estate property (the Gucci Rome store) in Rome, Italy. The lien was registered pursuant to a decision of an Italian court after the automatic stay was in effect, which lien was based on a Swiss arbitration award obtained by defendants against the debtor after the stay came into effect.

Defendants contend that the court below erred in the following respects:

1. Under the *Rooker–Feldman* doctrine and principles of international comity, it should not have exercised subject matter jurisdiction to declare the Italian registration of the Italian lien void *ab initio*. Such relief, they claim, could be granted only by an Italian court.

2. It should not have applied the automatic stay of 11 U.S.C. § 362(a) because either (a) the debtor's concealment of his interest in the property, the Swiss arbitration award, and the Italian lien, or (b) the trustee's failure to commence this adversary proceeding until well after both his discovery of the Swiss proceeding and the Italian lien and the distribution of the bulk of the assets of the estate rendered its enforcement inequitable.

3. The debtor's concealment and/or the trustee's delay, coupled with alleged detrimental reliance, established a defense of laches.

They seek reversal of the judgment and dismissal of the adversary proceeding. As this appeal may be resolved on the basis of legal issues, no recapitulation of the tortuous history of this matter and of the relationships among the parties is necessary.

### I. Jurisdiction

 Section 1334(e) of the Judicial Code confers on the district court in which a bankruptcy proceeding is pending "exclusive jurisdiction of all of the property, *wherever located,* of the debtor as of the commencement of such case, and of property of the estate."[1] The Gucci Rome store concededly was an asset of the bankrupt estate. The Bankruptcy Court therefore had *in rem* jurisdiction over the Gucci Rome store pursuant to 28 U.S.C. § 157(a) and the Standing Order of Referral of

---

1. 28 U.S.C. § 1334(e) (emphasis added).

Cases to Bankruptcy Judges, dated July 10, 1984.

■ Defendants' contention that the *Rooker–Feldman* doctrine requires a different conclusion because the Bankruptcy Court was asked to review the judgment of an Italian court is without merit. This is so regardless of whether defendants' characterization of the Bankruptcy's Court's action is correct.

■ The *Rooker–Feldman* doctrine embodies the principle that "among federal courts, only the Supreme Court has subject matter jurisdiction to review state court judgments."[2] Thus, a federal district court lacks jurisdiction over any claim that "directly challenges, or is 'inextricably intertwined' with, a prior state court decision."[3] But defendants have cited no authority for the proposition that *Rooker–Feldman*, whatever its precise reach,[4] applies with respect to foreign court decisions, and this Court has found none. Nor is that surprising. *Rooker–Feldman* is rooted in the structure of our own judicial system, chiefly the fact that federal court review of state court decisions may be had only in the United States Supreme Court.[5] And even if the *Rooker–Feldman* doctrine did apply, in appropriate circumstances, to preclude federal court review of the judgments of foreign courts, it would not apply here in light of Congress' affirmative grant to the district courts of exclusive jurisdiction over estate property.[6]

■ The defendants' comity argument, insofar as it is made as a challenge to subject matter jurisdiction, is no better. "[T]he principle of comity does not limit the legislature's power and is, in the final analysis, simply a rule of construction, it has no application where Congress has indicated otherwise."[7] Thus, whatever the merits of the contention that the court below should have deferred to the judgment of the Italian court as a matter of comity, it has nothing to do with its power to decide the case, its subject matter jurisdiction.

## II. Abstention

■ Defendants appear to argue that the Bankruptcy Court should have abstained here even if it had subject matter jurisdiction. As they intermingle their *Rooker–Feldman* contention with the abstention argument, however, it is difficult to understand precisely what the comity contention is once the *Rooker–Feldman* point is stripped away. As nearly as the Court understands it, the claim seems to be that it was wrong for the Bankruptcy Court to determine that an act of an Italian court was void *ab initio* and, in any case, that any proceeding affecting title to the Gucci Rome store could be brought only in Italy.

"Comity" refers to "a rather nebulous set of principles that may be applicable whenever a court's decision will have rami-

---

2. *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir.1999) (citing *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983)); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *Hachamovitch v. DeBuono*, 159 F.3d 687, 693–94 (2d Cir.1998).

3. *Karamoko v. New York City Housing Auth.*, 170 F.Supp.2d 372, 376 (S.D.N.Y.2001).

4. *See, e.g., Latino Officers Ass'n v. City of New York*, 253 F.Supp.2d 771, 778–80 (S.D.N.Y. 2003).

5. *Feldman*, 460 U.S. at 476, 103 S.Ct. 1303.

6. *E.g., Huse v. Huse–Sporsem, A.S.*, 300 B.R. 489, 498 (9th Cir. BAP 2003) (citing cases).

7. *Maxwell Comm. Corp. v. Societe Generale*, 93 F.3d 1036, 1047 (2d Cir.1996).

fications beyond its territorial jurisdiction and into that of another nation."[8] In the most closely analogous context, it refers to "principles that guide ... courts when deciding whether to abstain from exercising jurisdiction out of deference to parallel proceedings pending in other countries— what Justice Scalia has termed the 'comity of courts.'"[9]

■ As noted above, the Bankruptcy Court indisputably had *in rem* jurisdiction over the Gucci Rome store. Like all federal courts, it had a "virtually unflagging obligation ... to exercise the jurisdiction given" it.[10] Nevertheless, "federal courts have the inherent, discretionary power to abstain from exercising that jurisdiction in order to extend comity" to foreign proceedings.[11] The question therefore is whether it abused its discretion in declining to abstain from exercising that jurisdiction in deference to the Italian decision granting the judgment lien, some undefined future action in the Italian courts with respect to ownership of the Gucci Rome store, or both.[12]

To begin with, Section 1334(e) of the Judicial Code cuts strongly in favor of the exercise of jurisdiction. It embodies a Congressional determination that bankruptcy courts should determine rights in property of bankrupt estates regardless of where that property may be found. Thus, the Bankruptcy Court's entry of a decree that had a bearing on title to Italian real estate was entirely consistent with the Congressional purpose.

■ Second, this is not a situation in which there is any necessary or, indeed, likely conflict between the Bankruptcy Court and the courts of Italy. Contrary to defendants' repeated statements, the court below did not declare the act of an Italian court void *ab initio*. It declared void *ab initio*—obviously as a matter of United States law only—the *registration* of the Italian judgment lien. Moreover, the Bankruptcy Court neither purported to alter, nor could have altered, ownership interests in the Italian real estate in the same sense as in cases in which the property is within the physical power or territorial jurisdiction of an *in rem* court. The fact that Congress granted the district courts, and via their referral, the bankruptcy courts power to enter orders affecting assets of the debtor, wherever located, does not preclude foreign courts from exercising jurisdiction over estate property located in their countries, a matter that raises such questions as the extraterritorial effect of the automatic stay and the personal jurisdiction of the United States courts over the entity at whose behest the foreign court acts.[13] As a leading treatise put it:

"the extraterritorial jurisdiction of the United States courts for these purposes is *in personam* rather than *in rem*. If a creditor causes property of a title 11 estate to be seized in a foreign country,

**8.** *Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1519 n. 10 (11th Cir. 1994).

**9.** *United Feature Syndicate, Inc. v. Miller Features Syndicate, Inc.*, 216 F.Supp.2d 198, 210 (S.D.N.Y.2002) (quoting *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 817–18 n. 9, 113 S.Ct. 2891, 125 L.Ed.2d 612 (1993) (Scalia, J., dissenting)).

**10.** *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**11.** *United Feature Syndicate, Inc.*, 216 F.Supp.2d at 210.

**12.** *See id.* at 212.

**13.** 1 King, et al., Collier on Bankruptcy ¶ 3.01[5], at 3–32 to 3–33 (15th ed. rev.2003).

that creditor has violated the automatic stay. Whether that creditor can be punished, however, is a function of that creditor's amenability to United States process. By the same token, a United States court cannot control the action of the foreign court irrespective of section 1334(e). As one court put it, 'the bankruptcy court is precluded from exercising control over property of the estate located in a foreign country without the assistance of the foreign courts.'" *Id.* at 3–33 (footnote omitted) (quoting *In re Administrative Servs., Inc.,* 211 B.R. 88, 93 (Bankr.M.D.Fla.1997)).

As the property in question here is located in Rome, its fate ultimately will be determined by Italian courts, which will give such weight as they think appropriate to the decision below.[14]

■ Finally, it bears noting that the "strict duty [of federal courts] to exercise the jurisdiction that is conferred upon them by Congress"[15] is sufficiently strong that abstention normally is denied even where there are parallel proceedings pending in a foreign court[16]—that is, even where the claims at issue before the U.S. court are also before a foreign court. And this case is a far weaker one for abstention, as there is no parallel proceeding in Italy. Rather, there is an already completed Italian case, the judgment in which is not said to be *res judicata* here, and the possibility of some future Italian litigation in which the special considerations applica-

ble in the bankruptcy context presumably would not apply.

In all the circumstances, there is no substantial basis for defendants' contention that the court below abused its discretion by declining to abstain.

### III. Laches

■ Even assuming the Bankruptcy Court properly exercised its jurisdiction over the case below, defendants assert that it should have denied relief and refused to apply the automatic stay on the ground of laches, contending that:

● The debtor concealed his interest in the Gucci Rome store, the Swiss arbitration proceeding and award, the Swiss court order confirming the award, and the Italian court order domesticating the Swiss judgment in Italy in the bankruptcy case and did not raise the U.S. bankruptcy as a defense in those proceedings, thus concealing from the defendants and their predecessor-in-interest information that otherwise might have suggested that a claim later might be asserted that any relief they might obtain in the foreign proceedings might be avoided by a claim that those proceedings violated the automatic stay.

● The trustee knew of the foreign proceedings years ago but delayed assertion of any claim that they violated the automatic stay until after the

---

**14.** In doing so, the Italian courts may well take into account the fundamentally different objectives served by the bankruptcy litigation here and the prior litigation in Italy. In this case, the Bankruptcy Court was concerned with marshaling the assets of the debtor's estate for the benefit of creditors. It appears that the concern of the Italian court was purely with the question whether a Swiss arbitration award, entered in a dispute between the debtor and the defendants' prede-

cessor-in-interest, should be domesticated in Italy.

**15.** *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996).

**16.** *See China Trade & Development Corp. v. M.V. Choong Yong,* 837 F.2d 33, 36 (2d Cir. 1987).

bulk of the estate's assets were distributed.

- Defendants were prejudiced in that (a) their predecessor pursued the foreign proceedings, presumably at some expense, which he might not have done had he been aware of the U.S. bankruptcy and the risk that the result of those proceedings might be nullified as violative of the automatic stay, and (b) they no longer can obtain any substantial distribution from the asset because its assets were largely distributed during these delays.

Plaintiff, moreover, assumed that laches or some related equitable defense, if established, would be sufficient in law to preclude relief.[17] He contended, however, that defendants could not,[18] and did not prove facts constituting such a defense.[19]

By granting plaintiff the relief he sought, the court below implicitly rejected the laches defense. Although it received proposed findings of fact and conclusions of law from the parties, however, its opinion contains no findings or conclusions with respect to the laches defense. This Court thus has no way of knowing whether and to what extent the defense or elements thereof were rejected as a matter of law, the reasons for any such rejection, and what factual findings underlay the decision.

Fed.R.Civ.P. 52(a), which applied below by virtue of Bankr.R. 7052, provides in relevant part:

"In all actions tried upon the facts without a jury, ... the court shall find the facts specially and state separately its conclusions of law thereon...."

This does not necessarily require great detail or adherence to any rigid form. "The court need only make brief, definite, and pertinent findings and conclusions upon contested matters."[20] But "[t]he findings and conclusions must ... at least be sufficient to permit meaningful appellate review."[21]

In this case, the lack of findings and conclusions on the laches issue leave this Court unable properly to review the judgment appealed from. The legal standard applied in determining the existence of laches is unstated as are the lower court's conclusions as to what knowledge was chargeable to which persons as a matter of law. Likewise unstated are the inferences it drew from otherwise undisputed facts and, perhaps most important, its findings as to the states of mind of the various players at various times.

In the circumstances, the appropriate course is to vacate and remand.[22]

### Conclusion

For the foregoing reasons, the judgment of the Bankruptcy Court is vacated and

---

17. *See* Joint Pretrial Order § (8), Plaintiff's Contentions of Law, ¶ 1(c), at 17.

18. *Id.* § (6).

19. *See* Plaintiff's Proposed Findings of Fact and Conclusions of Law, *passim.*

 In certain respects, the plaintiff's position rests on legal contentions. For example, he argued that defendants' predecessor-in-interest was chargeable with constructive notice of the bankruptcy petition and that the debtor's knowledge and actions could be imputed to plaintiff as trustee of the estate. In other

respects, however, it depended upon factual contentions such as whether defendants' predecessor-in-interest had actual knowledge of the petition and when defendants themselves learned of various events.

20. 9A Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure: Civil 2D § 2579, at 541 (1995).

21. *In re Mazzeo,* 167 F.3d 139, 142 (2d Cir. 1999).

22. *Id.*

the case remanded for the purpose of making findings of fact and conclusions of law with respect to the equitable defense previously advanced by the defendants.

SO ORDERED.