RDM HOLDINGS, LTD v CONTINENTAL PLASTICS CO

Docket No. 278912. Submitted December 9, 2008, at Detroit. Decided
      December 16, 2008, at 9:00 a.m.

    RDM Holdings, Ltd., in an earlier action brought in the Macomb
Circuit Court against Continental Lighting, L.L.C. (Con-Lighting),
alleged breach of a lease for commercial property and obtained an
order granting partial summary disposition in its favor. Con-
Lighting then filed for chapter 7 bankruptcy protection in the
United States Bankruptcy Court for the Eastern District of
Michigan, Southern Division, and an order staying further pro-
ceedings in the Macomb Circuit Court action (RDM) was entered.
RDM and Chestnut Properties, L.L.C., then filed the instant
lawsuit (RDM II) in the Macomb Circuit Court against Continen-
tal Plastics Co. (Con-Plastics) and Continental Coatings, L.L.C.
(Con-Coatings), alleging successor liability, violation of the Uni-
form Fraudulent Transfer Act (UFTA), MCL 566.31 *et seq.*, and a
claim seeking to pierce the corporate veil. The theories of recovery
in RDM II reflected efforts to hold the defendants liable for
Con-Lighting's breaches of the lease involved in RDM I and for
breaches of leases, under which Chestnut was the landlord, with
respect to two additional commercial properties rented to Con-
Lighting. The bankruptcy proceedings resulted in a determination
that Con-Lighting had a zero asset estate, ultimately leading to the
filing of a "no distribution report" and the closing of the bank-
ruptcy estate. The circuit court, Mary A. Chrzanowski, J., granted
summary disposition in RDM II in favor of the defendants on the
basis of res judicata, ruling that the allegations raised in the RDM
II complaint could have been addressed in the bankruptcy proceed-
ings had the plaintiffs pursued the matter. The plaintiffs appealed
the circuit court's order and the denial of their motion for partial
summary disposition of the UFTA claim. The defendants cross-
appealed, contending that the trial court properly applied the
doctrine of res judicata arising out of the bankruptcy proceedings
or, if not, res judicata properly could have been grounded on the
RDM I lawsuit. The defendants further maintained that they were
entitled to summary disposition with regard to the successor
liability, UFTA, and corporate veil claims.

The Court of Appeals *held*:

1. Federal law governs the analysis of whether res judicata preclusion may result from bankruptcy proceedings.

2. Under federal law, res judicata precludes a subsequent lawsuit if four elements are present. First, there must have been a final decision on the merits by a court of competent jurisdiction. Second, there must be a subsequent action between the same parties or their privies. Third, there must be an issue in the subsequent action that was litigated or that should have been litigated in the prior action. Fourth, there must be an identity of the causes of action.

3. The general principle is that res judicata can be invoked in a lawsuit on the basis of an earlier bankruptcy proceeding.

4. The bankruptcy court, a court of competent jurisdiction in this case, did render a judgment on the merits for purposes of res judicata.

5. The RDM II lawsuit was between the same parties or their privies as those involved in the bankruptcy proceedings because RDM, Chestnut, Con-Plastics, and Con-Coatings were all listed as creditors in the bankruptcy proceedings and creditors in bankruptcy proceedings must be considered parties for purposes of res judicata.

6. A bankruptcy trustee has the authority to pursue fraudulent conveyance actions. A creditor who believes that a lawsuit should be commenced has the right to petition the bankruptcy court in an effort to compel the trustee to take action or to seek permission to prosecute the lawsuit. There is no merit in the plaintiffs' argument that they could not force the trustee to act. It cannot be said that the fraudulent conveyance claim could not have been litigated in the bankruptcy court. The third element of res judicata was satisfied with regard to the fraudulent conveyance claim.

7. There is no evidence to support a conclusion that Con-Coatings is liable to the plaintiffs under a corporate veil theory.

8. The debtor (Con-Lighting) and the trustee could not have asserted a claim to pierce Con-Lighting's own corporate veil in the bankruptcy proceedings. It cannot be concluded for purposes of res judicata that, with regard to Con-Plastics, the plaintiffs could or should have litigated the corporate veil claim in the bankruptcy proceedings. The trial court erred in dismissing this claim on the basis of res judicata arising out of the bankruptcy proceedings.

9. Con-Plastics was not Con-Lighting's corporate successor and did not carry on the business operations of Con-Lighting after

Con-Lighting ceased operations. Con-Plastics is entitled to summary disposition on the successor liability claim under MCR 2.116(C)(10).

10. It cannot be concluded that the plaintiffs could have pursued a successor liability claim in the bankruptcy court.

11. Successor liability and alter ego claims are not core proceedings that could only have been addressed in the bankruptcy court.

12. It is incorrect to conclude that because the fraudulent conveyance claim was not raised in the bankruptcy proceeding, no identity of claims exists. Identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action. Had the plaintiffs raised the fraudulent conveyance claim in the bankruptcy proceedings, as they should have done, the claim would have arisen out of the same transaction or core operative facts giving rise to the claim contained in RDM II. Therefore, the fourth element of res judicata was satisfied. The defendants were entitled to summary disposition with respect to the fraudulent conveyance claim.

13. The defendants' argument that the plaintiffs' claims are barred by res judicata grounded on the RDM I lawsuit was actually an argument regarding necessary joinder under MCR 2.205, which was not implicated under the facts presented.

14. There are genuine issues of material fact with respect to the successor liability claim against Con-Coatings and in regard to the corporate veil claim against Con-Plastics. Summary disposition was not proper with regard to those claims, and the case must be remanded for further proceedings regarding those claims.

Affirmed in part, reversed in part, and remanded for further proceedings.

1. JUDGMENTS — RES JUDICATA — FEDERAL LAW.

Res judicata under federal law precludes a subsequent lawsuit where four elements are present: first, there must be a final decision on the merits by a court of competent jurisdiction, second, the subsequent action must be between the same parties or their privies, third, there is an issue in the subsequent action that was or should have been litigated in the prior action, and fourth, there must be an identity of the causes of action.

2. JUDGMENTS — RES JUDICATA — BANKRUPTCY.

An application of the doctrine of res judicata may be grounded on earlier bankruptcy proceedings.

3. JUDGMENTS — RES JUDICATA — FINAL JUDGMENTS — BANKRUPTCY.

> A bankruptcy order that entirely resolves all the issues pertaining to a claim will satisfy the res judicata requirement of a final judgment.

4. BANKRUPTCY — PARTIES — CREDITORS — RES JUDICATA.

> Creditors in bankruptcy proceedings must be considered parties for purposes of res judicata.

5. JUDGMENTS — RES JUDICATA — BANKRUPTCY — FEDERAL LAW.

> If a party had a full and fair opportunity to litigate a claim in the bankruptcy court but chose not to do so, federal res judicata law bars litigating that claim in a state court.

6. JUDGMENTS — RES JUDICATA — IDENTITY OF CAUSES OF ACTION FOR RES JUDICATA.

> The element of federal res judicata law requiring identity of the prior and subsequent causes of action is satisfied if the claims arose out of the same transaction or series of transactions, or where the claims arose out of the same core operative facts; courts must compare the substance of the actions, not their form, in determining whether the causes of action are the same; identity of causes of action means an identity of the facts creating the right of action and of the evidence necessary to sustain each action.

*Clark Hill PLC* (by *William G. Asimakis, Jr.,* and *Paul C. Smith*) for the plaintiffs.

*Bellanca, Beattie & DeLisle, P.C.* (by *James C. Zeman*), for the defendants.

Before: MURPHY, P.J., and SAWYER and WHITBECK, JJ.

MURPHY, P.J. Plaintiffs appeal as of right the trial court's order granting summary disposition in favor of defendants pursuant to MCR 2.116(C)(7) on the basis of res judicata grounded on earlier bankruptcy proceedings conducted under title 11 of the United States Code, the Bankruptcy Code, and more specifically chapter 7, 11 USC 701 *et seq.* (liquidation). Defendants cross-appeal, arguing alternative grounds, which were raised but not decided below, in support of the trial court's

ruling to summarily dismiss plaintiffs' action.[1] We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I. OVERVIEW

In an earlier lawsuit filed by plaintiff RDM Holdings, Ltd. (RDM), against Continental Lighting, L.L.C. (Con-Lighting), formerly known as Continental-Chivas, L.L.C. (Con-Chivas), neither of which is a party here, RDM obtained an order granting partial summary disposition in its favor, but Con-Lighting then filed for chapter 7 bankruptcy protection, staying further proceedings. That lawsuit, which we shall refer to as the RDM I litigation, concerned commercial property located on Merrill Road in Sterling Heights that was leased to Con-Lighting and used to manufacture automobile parts for General Motors Corporation (GM) and DaimlerChrysler Corporation. RDM alleged breach of the lease with respect to Con-Lighting's obligations to pay holdover rent, insurance, and damages for building repairs and cleanup.[2]

Following the bankruptcy stay that halted the RDM I litigation, RDM and Chestnut Properties, L.L.C. (Chestnut), filed the instant suit against defendants Continental Plastics Co. (Con-Plastics) and Continental Coatings, L.L.C. (Con-Coatings), alleging successor liability, violation of the Uniform Fraudulent Transfer

---

[1] It was unnecessary for defendants to file a cross-appeal to present alternative arguments in support of the trial court's ruling. See *In re Herbach Estate*, 230 Mich App 276, 284; 583 NW2d 541 (1998) ("Although a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal, a cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court.").

[2] The order granting partial summary disposition in RDM I provided that Con-Lighting was "a holdover tenant and obligated under the lease agreement for a term of an additional year."

Act (UFTA), MCL 566.31 *et seq.*, and a claim seeking to pierce the corporate veil. We shall refer to the present lawsuit as the RDM II litigation. In RDM II, the theories of recovery reflected efforts to hold defendants liable for Con-Lighting's alleged breaches of the Merrill Road lease, which were also the subject matter of the RDM I lawsuit. Plaintiffs further alleged in RDM II that Con-Lighting breached leases, under which Chestnut was the landlord, with respect to two additional business properties rented to Con-Lighting.

The trial court granted summary disposition in favor of defendants under MCR 2.116(C)(7) on the basis of res judicata, ruling that the allegations raised in the RDM II complaint could have been addressed in the bankruptcy proceedings had plaintiffs pursued the matter. Plaintiffs appeal that determination, arguing that the elements of res judicata had not been satisfied, and they appeal the trial court's denial of their motion for partial summary disposition on the UFTA claim. Defendants argue that the trial court properly applied the doctrine of res judicata arising out of the bankruptcy proceedings and that plaintiffs were not entitled to summary disposition on the UFTA claim. Moreover, defendants cross-appeal, contending that, even if the trial court erred in applying res judicata in the context of the court's reliance on the earlier bankruptcy proceedings, res judicata grounded on the RDM I lawsuit would apply. Further, defendants maintain that they were entitled to summary disposition under MCR 2.116(C)(10) with regard to the successor liability, UFTA, and corporate veil claims.

### II. REVIEW OF THE CHAPTER 7 BANKRUPTCY PROCEEDINGS

On August 19, 2005, 11 days after the order granting partial summary disposition was entered in RDM I,

Con-Lighting filed a voluntary petition for bankruptcy under chapter 7 in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division. The petition referred to past names used by Con-Lighting, i.e., Chivas Products, Ltd., and Con-Chivas, it was signed by Kenneth Lamb as president of Con-Lighting,[3] and the petition estimated that there existed between 50 to 99 creditors. A summary of bankruptcy schedules, and the schedules themselves, indicated that Con-Lighting had zero assets, while its liabilities amounted to approximately $2.4 million. A statement of financial affairs provided that Con-Lighting had annual gross income from sales in the amounts of $15.7 million in 2002, $12.7 million in 2003, and $9.5 million in 2004. Additionally, the statement of financial affairs indicated that $940,233 in property and assets had been surrendered to Comerica Bank.[4] In an October 19, 2005, § 341

[3] We note that at the time of the bankruptcy filing, Lamb was a manager for Con-Coatings and had been in that position since October 18, 2004.

[4] In actuality, Con-Lighting property and assets had been surrendered to Con-Plastics pursuant to an agreement executed on February 15, 2005, and that surrender agreement indicated that the value of the property and assets was $1.3 million. Before February 15, 2005, Con-Lighting had been obligated to repay certain Comerica Bank loans, which had been issued over the years and secured by Con-Lighting property, and there was a total outstanding balance of approximately $4.6 million. By agreement also dated February 15, 2005, Comerica assigned to Con-Plastics all of the bank's rights under the promissory notes and security instruments that had been executed by Con-Lighting. In exchange, Con-Plastics executed a note in favor of Comerica in the amount of $4.6 million, representing the debt that had been owed by Con-Lighting to the bank. Con-Plastics thereby became itself indebted to Comerica, taking Con-Lighting out of the picture. There was documentary evidence indicating that Con-Lighting property had made its way to Con-Coatings months before the surrender agreement was executed, that some of Con-Lighting's employees began working for Con-Coatings in October 2004, and that Con-Lighting's operations ceased in October 2004, with operations and production shifting to Con-Coatings.

hearing,[5] with bankruptcy trustee Mark Shapiro presiding, Lamb testified that there was a mistake in the petition and that the Con-Lighting property and assets had actually been surrendered to Con-Plastics. Lamb was unaware of any appraisals being done in regard to the Con-Lighting property before its surrender.

The bankruptcy petition stated that Gregory Eaton held a 51 percent interest in Con-Lighting and that the remaining 49 percent interest was held entirely by Con-Plastics. The petition provided that Con-Plastics currently had possession of Con-Lighting's books of account and records, along with records of a Con-Lighting inventory. Bankruptcy schedule F (creditors holding unsecured nonpriority claims) listed, among many other creditors, plaintiff Chestnut, with a claim amount of $1,600, and RDM, with the claim amount expressed as "unknown." Also listed as creditors holding unsecured nonpriority claims were Con-Coatings, owed $1.5 million, and Con-Plastics, owed $303,286.

Bankruptcy trustee Shapiro testified in his deposition that his job in conducting a chapter 7 bankruptcy was to ascertain whether any assets were available for distribution and to liquidate available assets for the benefit of the creditors. He stated that the Con-Lighting bankruptcy was a zero asset estate, which ultimately led to the filing of a "no distribution report" and the closing of the bankruptcy estate. Shapiro testified that claims of successor liability, piercing the corporate veil, alter ego, and fraudulent conveyances were all claims that could be brought or raised by a trustee in the context of a bankruptcy proceeding, usually taking the form of an adversarial proceeding. He asserted that he had done so in the past in other cases. According to

---

[5] This is a reference to 11 USC 341, which concerns the meeting of creditors.

Shapiro, he could have pursued those claims against Con-Plastics and Con-Coatings in the bankruptcy court on his own initiative or if requested and justified; plaintiffs, however, never made such a request. Had those claims been successfully pursued in the bankruptcy proceedings, Shapiro could have taken monies recovered from Con-Plastics and Con-Coatings and distributed the funds to creditors, including plaintiffs. He indicated that he has a fiduciary duty to all creditors to look into the validity of such claims. All creditors would have received notice of the bankruptcy. Shapiro was not aware of any laws that obligated or mandated a creditor in bankruptcy proceedings to come forward with claims such as those alleged in RDM II.

We recognize that, while providing some helpful insight, Shapiro's testimony concerning the authority of a trustee and the bankruptcy court relative to successor liability, corporate veil, and fraudulent conveyance claims and issues does not control. Such matters are governed by the Bankruptcy Code and relevant caselaw construing the code.

### III. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). The issue whether the doctrine of res judicata bars a subsequent lawsuit constitutes a question of law that this Court likewise reviews de novo on appeal. *Stoudemire v Stoudemire*, 248 Mich App 325, 332; 639 NW2d 274 (2001).

### IV. SUMMARY DISPOSITION TESTS

We shall first address the issue of res judicata and whether application of the doctrine could be grounded

on the bankruptcy proceedings under the circumstances presented. Under MCR 2.116(C)(7) (claim barred by prior judgment, i.e., res judicata), this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998). The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). This Court must consider the documentary evidence in a light most favorable to the nonmoving party. *Herman v Detroit*, 261 Mich App 141, 143-144; 680 NW2d 71 (2004). If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. *Huron Tool & Engineering Co v Precision Consulting Services, Inc*, 209 Mich App 365, 377; 532 NW2d 541 (1995). If a factual dispute exists, however, summary disposition is not appropriate. *Id.*

Because we conclude that the trial court erred in part in applying res judicata, we shall also consider defendants' arguments under MCR 2.116(C)(10). MCR 2.116(C)(10) provides for summary disposition where there is no genuine issue regarding any material fact and the moving party is entitled to judgment or partial judgment as a matter of law. A trial court may grant a motion for summary disposition under MCR 2.116(C)(10) if the pleadings, affidavits, and other documentary evidence, when viewed in a light most favorable to the nonmovant, show that there is no genuine issue with respect to any material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996), citing MCR 2.116(G)(5). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West*

*v Gen Motors Corp,* 469 Mich 177, 183; 665 NW2d 468 (2003). A court may only consider substantively admissible evidence actually proffered relative to a motion for summary disposition under MCR 2.116(C)(10). *Maiden v Rozwood,* 461 Mich 109, 121; 597 NW2d 817 (1999).

V. ANALYSIS : RES JUDICATA AND BANKRUPTCY PROCEEDINGS

A. GOVERNING PRINCIPLES

Our starting point is to determine the applicable res judicata test. Chronologically, we are confronted with a situation in which a federal proceeding was initiated before the complaint in RDM II was filed and the bankruptcy case was closed before the hearing on the motion for summary disposition. In *Beyer v Verizon North, Inc,* 270 Mich App 424, 428-429; 715 NW2d 328 (2006), this Court stated:

> This Court must apply federal law in determining whether the doctrine of res judicata requires dismissal of this case because the consent judgment in the prior suit was entered by a federal court. *Pierson Sand & Gravel, Inc v Keeler Brass Co,* 460 Mich 372, 380-381; 596 NW2d 153 (1999). Under federal law, res judicata precludes a subsequent lawsuit if the following elements are present: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their "privies"; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Becherer v Merrill Lynch, Pierce, Fenner & Smith, Inc,* 193 F3d 415, 422 (CA 6, 1999), quoting *Bittinger v Tecumseh Products Co,* 123 F3d 877, 880 (CA 6, 1997) (emphasis omitted in *Becherer*). [Some quotation marks omitted.][6]

---

[6] We note that the United States Supreme Court has stated that, pursuant to the doctrine of res judicata, a final judgment on the merits precludes the parties or their privies from relitigating matters that were

In *Pierson Sand, supra* at 380-381, our Supreme Court, quoting 18 Moore, Federal Practice, § 131.21(3)(d), p 131-50, stated:

> "If a plaintiff has litigated a claim in federal court, the federal judgment precludes relitigation of the same claim in state court based on issues that were or could have been raised in the federal action, including any theories of liability based on state law. The state courts must apply federal claim-preclusion law in determining the preclusive effect of a prior federal judgment."

Accordingly, federal law guides our res judicata analysis, and we will look to any relevant opinions issued by the United States Court of Appeals for the Sixth Circuit, absent pertinent United States Supreme Court precedent, on matters concerning creditors' rights and the extent of the authority exercisable by the bankruptcy court and the trustee in the context of this case. See *In re Livingston*, 379 BR 711, 725 (WD Mich, 2007) ("It is . . . understood that district courts and bankruptcy courts within this circuit are bound by published Sixth Circuit decisions.");[7] *In re Dow Corning Corp*, 244 BR 634, 651 (ED Mich, 1999) (subsequent history omitted) (Michigan bankruptcy court is bound by Sixth Circuit ruling on an issue). Opinions issued by the United States District Court for the Eastern District of Michigan, as well as those issued by the United States Bankruptcy Court for the Eastern District of Michigan, would also be relevant on issues concerning

---

or could have been raised in the first action. *San Remo Hotel, LP v City & Co of San Francisco, California*, 545 US 323, 336 n 16; 125 S Ct 2491; 162 L Ed 2d 315 (2005).

[7] The bankruptcy judge in *Livingston, supra* at 726, further stated that "the policies of both the Supreme Court and the Sixth Circuit require that I accept their interpretations of the Bankruptcy Code regardless of whether my own interpretation may be different."

exercisable authority and creditors' rights. And of course, the Bankruptcy Code is the bedrock of any review.

While Michigan bankruptcy courts are bound by reported Sixth Circuit rulings construing the Bankruptcy Code, thereby making it appropriate for us to examine the rights, duties, and authority of those involved in bankruptcy proceedings under Sixth Circuit precedent, this consideration naturally extends only to the res judicata question whether the issues in RDM II could or should have been litigated in the bankruptcy court. For example, if the United States Court of Appeals for the Fifth Circuit differed from the Sixth Circuit on an issue regarding whether the Bankruptcy Code granted a chapter 7 trustee authority to initiate an adversarial proceeding on an alter ego theory, it would make little sense for us to follow Fifth Circuit precedent in determining whether trustee Shapiro could or should have pursued an alter ego theory in a bankruptcy court located within the Sixth Circuit's jurisdiction. But, and again appreciating that we must apply federal law, this does not mean that we are required to apply federal law as interpreted by the Sixth Circuit on other res judicata issues, such as whether the bankruptcy court issued a final decision on the merits, whether the same parties or privies are involved, whether there is an identity of the causes of action, or whether other res judicata principles are implicated. These issues are, for the most part, inextricably linked to interpretation of the United States Bankruptcy Code. Under *Abela v Gen Motors Corp*, 469 Mich 603, 606; 677 NW2d 325 (2004), our Supreme Court ruled that state courts are bound by decisions issued by the United States Supreme Court that construe federal law. But "there is no similar obligation with respect to decisions of the lower federal courts." *Id.* If there are conflicting

decisions rendered by lower federal courts, we are free to choose the view that seems most appropriate to us. *Id.* And even if no such conflict exists, we are not bound "to follow the decisions of even a single lower federal court." *Id.* at 607. Lower federal court rulings may be persuasive, but they are not binding on a state court. *Id.*[8] Furthermore, in *Pierson Sand,* the federal court action, which predated the state court action, originated in the United States District Court for the Western District of Michigan, eventually winding up before the Sixth Circuit for decision. *Pierson Sand, supra* at 375-377. The *Pierson Sand* Court, in conducting its res judicata analysis, relied not only on Sixth Circuit precedent, but also cited Second, Third, Fifth, and Ninth circuit opinions. *Id.* at 384, 386.

We also make the observation that both the Michigan Supreme Court and the United States Supreme Court have held that application of the doctrine of res judicata can be grounded on earlier bankruptcy proceedings. In *Gursten v Kenney,* 375 Mich 330, 335; 134 NW2d 764 (1965), our Supreme Court stated that res judicata applies to every issue that belonged within the subject matter of the bankruptcy action, including those that the parties, exercising reasonable diligence, could have brought forward at the time. The Court concluded:

> While plaintiff may have had an election of remedies for the alleged tortious conduct of the defendants, he elected to pursue the matter before the referee in bankruptcy. Having made that choice, he was under obligation to pursue it or abide by an adverse result because of his failure to do so. [*Id.*]

In *DePolo v Greig,* 338 Mich 703; 62 NW2d 441 (1954), our Supreme Court applied res judicata to bar a

---

[8] *Abela* concerned the proper interpretation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act, 15 USC 2301 *et seq. Abela, supra* at 605-606.

circuit court action in which the plaintiffs sued the president of a corporation for selling them unvalidated stock, where the plaintiffs already had the full opportunity to present the same issues in the corporation's bankruptcy proceedings. The Court stated, "Defendant as president and principal stockholder of the corporation was a stranger to the bankruptcy proceedings in only the strictest sense of the term[, and] [p]laintiffs had full opportunity to present the same issues now presented against the defendant." *Id.* at 711-712.

In *Katchen v Landy*, 382 US 323, 334; 86 S Ct 467; 15 L Ed 2d 391 (1966), the United States Supreme Court expressed the following:

> [O]nce a bankruptcy court has dealt with the preference issue nothing remains for adjudication in a plenary suit. The normal rules of *res judicata* and collateral estoppel apply to the decisions of bankruptcy courts. More specifically, a creditor who offers a proof of claim and demands its allowance is bound by what is judicially determined, and if his claim is rejected, its validity may not be relitigated in another proceeding on the claim. [Citations omitted.]

Accordingly, as a general principle, res judicata can be invoked in a lawsuit on the basis of an earlier bankruptcy proceeding. And with respect to chapter 7 in particular, the United States Court of Appeals for the Second Circuit in *EDP Med Computer Sys, Inc v United States*, 480 F3d 621, 624-625 (CA 2, 2007), observed:

> *Res judicata* "is a rule of fundamental repose important for both the litigants and for society." It "relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." These virtues have no less value in the bankruptcy context; this is particularly true in a Chapter 7 liquidation where it is desirable that matters be resolved as expeditiously and

economically as possible. . . . "[I]t is more imperative than ever that the doctrine of *res judicata* be applied with unceasing vigilance" to Chapter 7 proceedings[.] [Citations omitted; first three alterations in original.]

### B. ELEMENT 1: FINAL DECISION ON THE MERITS BY A COURT OF COMPETENT JURISDICTION

We now examine the first element of federal res judicata, which requires a final decision on the merits by a court of competent jurisdiction. Plaintiffs argue that the bankruptcy court did not render a judgment on the merits for purposes of res judicata. We disagree. In a chapter 7 bankruptcy, the trustee marshals the assets of the debtor, liquidates the estate, and distributes the proceeds, if any, to the creditors. 11 USC 721 *et seq.* (subchapter II of chapter 7—collection, liquidation, and distribution of the estate); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 BR 207, 218 (D Del, 1995). The Federal Rules of Bankruptcy Procedure (FRBP) address the closing of a chapter 7 liquidation case, providing:

> If in a chapter 7 . . . case the trustee has filed a final report and final account and has certified that the estate has been fully administered, and if within 30 days no objection has been filed by the United States trustee or a party in interest, there shall be a presumption that the estate has been fully administered. [FRBP 5009.]

Here, there is no dispute that trustee Shapiro filed the necessary documents, that he certified that the estate was fully administered, and that there were no objections. "After an estate is fully administered and the court has discharged the trustee, the court shall close the case." 11 USC 350(a). The Con-Lighting chapter 7 case was closed by order of the bankruptcy court.

With respect to determining the finality of a bankruptcy order, each matter that arises between the filing of a bankruptcy petition and the issuance of a closing order is treated as a separate proceeding, and a final order can be any order that concludes a discrete judicial unit in the larger case. *In re Moody*, 817 F2d 365, 367-368 (CA 5, 1987). A bankruptcy order that entirely resolves all the issues pertaining to a claim will satisfy the res judicata requirement of a final judgment. *In re Iannochino*, 242 F3d 36, 43-44 (CA 1, 2001). For purposes of res judicata grounded on bankruptcy proceedings, "[c]losing orders are, of course, final judgments on the merits." *In re Coastal Plains, Inc*, 338 BR 703, 713 n 5 (ND Tex, 2006). Here, the case was closed after the trustee earlier issued a "no distribution report" on determination that the bankruptcy estate had zero assets. There were no further matters to resolve.[9] Thus, we conclude that there was a final decision on the merits by a court of competent jurisdiction, thereby satisfying the first element of res judicata.[10]

---

[9] Any suggestion by plaintiffs that there was no final decision on the merits because the bankruptcy court never determined whether there were fraudulent conveyances or other wrongful acts lacks logic. The bankruptcy court never entertained these issues because they were never brought to its attention, and such a suggestion would effectively eliminate res judicata being applied in the context of an argument that a claim could have been presented but was not.

[10] Plaintiffs place great reliance on *Hatchett v United States*, 330 F3d 875 (CA 6, 2003), for the proposition that there was no final decision on the merits. *Hatchett* concerned an action by the plaintiffs, husband and wife, against the government for a wrongful levy on entireties property, where it was only the plaintiff husband who owed more than $8 million in taxes. The central theme of the government's defense and argument was that levies may attach to entireties property. A secondary argument was that the husband fraudulently conveyed the property to himself and his wife while insolvent; the argument was referred to as the fraudulent conveyance defense. The conveyance issue was the subject of previous and finalized bankruptcy proceedings. The lower court refused to allow presentation of

We acknowledge that when a chapter 7 proceeding concludes with regard to a corporate entity, there is no discharge of debts. 11 USC 727(a)(1) ("The court shall grant the debtor a discharge, unless . . . the debtor is not an individual[.]"); *In re Strada Design Assoc, Inc*, 326 BR 229, 240 (SD NY, 2005) (debtor corporations not entitled to discharge or a fresh start). However, this does not negate the fact that the bankruptcy court closed the case, nor does it run contrary to our conclusion that there was a final decision on the merits. Con-Lighting's debts were not and could not be discharged and there remained potential liability on the debts by Con-Plastics and Con-Coatings, but any claims against these defendants were still subject to principles of res judicata.

### C. ELEMENT 2: A SUBSEQUENT ACTION BETWEEN THE SAME PARTIES OR THEIR PRIVIES

Next, we examine whether the RDM II lawsuit was between the same parties or their privies as those

the fraudulent conveyance defense because, in part, the bankruptcy trustee alone had standing to pursue a claim for a fraudulent conveyance and res judicata barred further litigation on the matter after the trustee abandoned the fraudulent conveyance claim and officially settled the bankruptcy. *Id*. at 878-879, 885. The *Hatchett* court reversed, holding that the trustee abandoned the fraudulent conveyance claim, that the government was entitled to pursue the claim or defense after the bankruptcy proceedings concluded, and that res judicata was not applicable because there was no final judgment on the merits regarding a fraudulent conveyance, given that the trustee had abandoned the claim. *Id*. at 886. We decline to give any weight to *Hatchett*. First, it involved a procedural posture (defense in a civil suit against the government) radically different from the proceedings here or in any of the other cases we have reviewed and cited. Second, the court relied, in part, on cases involving the rights of the Internal Revenue Service and the government to take action. *Id*. Also, there was a formal abandonment of the fraudulent conveyance claim by the trustee, which did not take place in the instant action. Further, the res judicata analysis was woefully cursory. To the extent that *Hatchett* has any relevance here and runs contrary to our ruling, we are not bound by it and reject its application, favoring instead the authorities cited earlier in this opinion.

involved in the bankruptcy proceedings. Plaintiffs contend that the parties in RDM II were not parties to Con-Lighting's bankruptcy case. We disagree.

There is no dispute that RDM and Chestnut, as well as Con-Plastics and Con-Coatings, were all listed as creditors in the bankruptcy proceedings. Creditors in bankruptcy proceedings must be considered parties for purposes of res judicata. *Sanders Confectionary Products, Inc v Heller Financial, Inc*, 973 F2d 474, 480-481 (CA 6, 1992); *Federated Mgt Co v Latham & Watkins*, 138 Ohio App 3d 815, 823; 742 NE2d 684 (2000). "It is undisputed that a creditor of the debtor qualifies as a party for res judicata purposes." *In re G-P Plastics, Inc*, 320 BR 861, 865 (ED Mich, 2005); see also *In re Farmland Industries, Inc*, 376 BR 718, 727 (WD Mo, 2007), remanded on other grounds, 378 BR 829 (CA 8, 2007). The rights and obligations of debtors, creditors, shareholders, and other parties in interest are adjudicated in bankruptcy proceedings for purposes of res judicata. *In re Xpedior Inc*, 354 BR 210, 224 (ND Ill, 2006). Among other rights, creditors are entitled to notice of various bankruptcy proceedings, FRBP 2002, they can participate in the meeting of creditors, 11 USC 341; FRBP 2003, and they can file proofs of claim, 11 USC 501(a). A creditor is a party in interest under the Bankruptcy Code. *In re Thompson*, 965 F2d 1136, 1147 (CA 1, 1992). Accordingly, we conclude that the "same parties" requirement of res judicata was satisfied in the case at bar.[11]

### D. ELEMENT 3: RDM II ISSUES COULD OR SHOULD HAVE BEEN LITIGATED IN BANKRUPTCY COURT

Next, we examine the third element of res judicata,

---

[11] We note that Con-Plastics held the status of a party in the bankruptcy proceedings not only on the basis of its position as a creditor, but also because it was a creditor-shareholder. *Browning v Levy*, 283 F3d 761, 777 (CA 6, 2002).

which is whether the claims in RDM II could or should have been litigated in the bankruptcy proceedings. We find that this issue poses the most difficult part of our analysis and requires careful contemplation of each particular claim.

We begin by emphasizing that under federal res judicata law, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Federated Dep't Stores, Inc v Moitie*, 452 US 394, 398; 101 S Ct 2424; 69 L Ed 2d 103 (1981) (emphasis added). If a party had a full and fair opportunity to litigate a claim in the bankruptcy court but chose not to do so, res judicata bars litigating that claim thereafter in a state court. *Ins Co of State of Pennsylvania v HSBC Bank USA*, 10 NY3d 32, 40; 852 NYS2d 812; 882 NE2d 381 (2008). The important aspect to remember is not whether a particular claim is compulsory; rather, it is whether the claim should have been considered during the bankruptcy proceedings. *Winget v JP Morgan Chase Bank, NA*, 537 F3d 565, 580 (CA 6, 2008).

With respect to plaintiffs' cause of action for a fraudulent conveyance, the claim arose out of the collateral surrender agreement discussed in footnote 4 of this opinion. Count II of the RDM II complaint alleged a violation of the UFTA, asserting that the lease breaches arose before the transfer of assets and obligations, that the transfer was made with the intent to hinder, delay, or defraud plaintiffs and other creditors, that Con-Lighting did not receive reasonably equivalent value in exchange for the transfer, and that at the time of the transfer Con-Lighting was left with an unreasonably small amount of assets despite the fact that it continued to engage in business with plaintiffs under

the leases. The UFTA count further alleged that at the time of the transfer, Con-Lighting should have been aware that it would incur debts beyond its ability to pay, that Con-Lighting was insolvent at the time of the transfer, or became insolvent because of the transfer, that defendants had reasonable cause to believe that Con-Lighting was or became insolvent, and that defendants were "insiders" as defined under the UFTA. Plaintiffs contended that they were entitled "to an attachment against the transferred assets or other property" of defendants to the extent of Con-Lighting's obligations to plaintiffs.

28 USC 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, . . . and may enter appropriate orders and judgments[.]" Core proceedings under the Bankruptcy Code include "proceedings to determine, avoid, or recover fraudulent conveyances[.]" 28 USC 157(b)(2)(H). Therefore, a claim under the UFTA would constitute a core proceeding in bankruptcy, allowing the bankruptcy court to render a ruling on a fraudulent conveyance claim. *In re Bliss Technologies, Inc*, 307 BR 598, 604-605 (ED Mich, 2004). A final decision by a bankruptcy court in a core proceeding can be res judicata. *Sanders Confectionary, supra* at 482.

In general, a trustee represents the estate of the debtor, 11 USC 323(a), and he or she has the capacity to sue others or to be sued, 11 USC 323(b). Under 11 USC 544(b)(1), a "trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . ." This section has been coined a strong-arm provision that allows a trustee to step into the shoes of a creditor in an

effort to nullify transfers that are voidable pursuant to state fraudulent conveyance acts for the purpose of benefiting all the debtor's creditors. *In re Fordu*, 201 F3d 693, 698 n 3 (CA 6, 1999); *Nat'l Labor Relations Bd v Martin Arsham Sewing Co*, 873 F2d 884, 887 (CA 6, 1989), mod on reh on other grounds, 882 F2d 216 (CA 6, 1989); *In re Forbes*, 372 BR 321, 330 (CA 6, 2007); *In re Harlin*, 321 BR 836, 838 n 2 (ED Mich, 2005); *Bliss Technologies, supra* at 604. Additionally, 11 USC 548(a)(1) provides a trustee with a mechanism to avoid fraudulent transfers of a debtor's interest without reliance on particular state law, where the statute itself sets forth criteria for determining whether a transfer is fraudulent and can be avoided. See *Donell v Kowell*, 533 F3d 762, 776 n 7 (CA 9, 2008) (11 USC 548 is viewed as the federal fraudulent transfer provision, whereas 11 USC 544[b] authorizes fraudulent transfer actions by the trustee under, in part, applicable state law). 11 USC 550 addresses the liability of a transferee when a transfer of property has been avoided. Accordingly, a trustee has the authority to pursue fraudulent conveyance actions.

Under chapter 7, in relation to the statutory duties of a trustee, the trustee is required to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest[.]" 11 USC 704(a)(1). A chapter 7 trustee must also "investigate the financial affairs of the debtor[.]" 11 USC 704(a)(4). As reflected in the testimony of trustee Shapiro, he would have had a duty to pursue a claim in an adversarial proceeding, FRBP 7001 *et seq.*, seeking to avoid the transfer of Con-Lighting's property had he considered the transfer to actually have been fraudulent. This is because of his duty and obligation to "collect . . . the property of the estate" for which he served. Plaintiffs, however, never brought their con-

cerns to Shapiro's attention, although the record suggests that Shapiro, or his office, had information that might have called for further inquiry, i.e., the discrepancies between the surrender agreement and the bankruptcy documents filed by Con-Lighting's president. Shapiro himself conceded this point in his testimony. If a fraudulent transfer action had been successfully pursued, it would have enlarged the debtor's estate for the benefit of all creditors.

The question becomes whether the authority and duty of the trustee to bring a fraudulent transfer action, when justified, permit us to conclude that there was a full and fair opportunity to litigate the matter and that it should have been litigated, where it would be somewhat speculative whether trustee Shapiro would have actually brought an action even if plaintiffs vigilantly pursued the matter with Shapiro. Our concerns, however, are alleviated by the Sixth Circuit's ruling in *In re Automated Business Sys, Inc*, 642 F2d 200 (CA 6, 1981). In that case, a creditor brought an action in bankruptcy court seeking to require another creditor to return money that had been transferred to it by the debtor, which transfer was allegedly made in an effort to defraud other creditors. The case arose out of a chapter 7 liquidation. An initial question that the Sixth Circuit had to answer was whether the creditor plaintiff could bring the action for a fraudulent transfer, rather than the bankruptcy trustee. The Sixth Circuit found that the creditor had standing to pursue the claim, reasoning:

> Generally if a trustee in bankruptcy defaults in the performance of any duty, such as seeking to set aside a fraudulent transfer, "the court may upon application direct him in his duty or, if he be recalcitrant, remove him for disobedience, or permit a creditor to act in his name." [*Id.* at 201 (citation omitted).]

The Sixth Circuit court agreed with the bankruptcy court that a creditor who believes that a lawsuit should be commenced has the right to petition the bankruptcy court in an effort to compel the trustee to take action, or to seek permission to prosecute the lawsuit. *Id.*

In a case involving an alleged fraudulent transfer, *In re Gibson Group, Inc*, 66 F3d 1436, 1446 (CA 6, 1995), the Sixth Circuit applied a rule comparable to that utilized in *Automated Business*, but did so in the context of a chapter 11 case. The court, referring to *Automated Business*, stated that "[w]e established in that case that a creditor could initiate an avoidance action with the permission of the court, after making a demand upon the trustee and if the trustee defaulted in his duty." *Gibson Group, supra* at 1443.

On the strength of *Automated Business* and *Gibson Group*, we find no merit in plaintiffs' argument here that they could not force the trustee to act and that, therefore, it could not be said that their fraudulent conveyance claim could have been litigated in the bankruptcy court. Had plaintiffs pursued the matter with trustee Shapiro, and had Shapiro refused to file a fraudulent transfer action, plaintiffs would have had redress with the bankruptcy court, possibly leading to plaintiffs filing their own claim or Shapiro being ordered to pursue the claim. While it is true that the bankruptcy court, in such a scenario, could conceivably have rejected plaintiffs' efforts, an appeal would have been possible and the bankruptcy court's decision-making process on the matter would necessarily have contemplated the validity and soundness of a fraudulent transfer claim. In other words, plaintiffs would have had their day in court to some degree. With the avenues available to plaintiffs in the bankruptcy proceedings to have their fraudulent transfer issues ad-

dressed, their decision to do nothing implicates some of the underlying purposes of res judicata, which include conservation of judicial resources and prevention of inconsistent decisions. Indeed, if plaintiffs were allowed to pursue the UFTA claim in state court, and were they successful in obtaining the requested relief attaching the transferred assets, MCL 566.37(1)(b) (attachment relief for UFTA violation), an underlying premise upon which the relief was awarded would be that the property should have remained in the hands of Con-Lighting. This conclusion would run contrary to the trustee's accounting in bankruptcy showing that Con-Lighting had zero assets to disburse and it would offend the rights of other creditors.

We conclude that the third element of res judicata was satisfied in regard to the fraudulent conveyance claim.

With respect to the claim seeking to pierce the corporate veil, plaintiffs asserted that Con-Plastics was a 49 percent owner of Con-Lighting, that Con-Lighting was a mere instrumentality of Con-Plastics, that the corporate entity known as Con-Lighting was used to commit a fraud or wrong against plaintiffs, and that plaintiffs suffered an unjust loss as a result of the fraud or wrong. We initially note that the complaint, as well as the documentary evidence, lends no support for a conclusion that Con-Coatings, which held no interest in Con-Lighting, and holds no interest in Con-Plastics, is liable to plaintiffs under a corporate veil theory. Thus, Con-Coatings is entitled to summary disposition on this claim under both MCR 2.116(C)(8)[12] and (10). The claim pertains solely to Con-Plastics.

---

[12] MCR 2.116(C)(8) provides for summary disposition when the plaintiff "failed to state a claim on which relief can be granted."

As stated above, 11 USC 704(a)(1) provides that the trustee is required to "collect and reduce to money the property of the estate for which such trustee serves[.]" "Property of the estate" is composed of, in part, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 USC 541(a)(1). This definition applies to property "wherever located and by whomever held[.]" 11 USC 541(a). "It is clear that *causes of action* belonging to the debtor prior to bankruptcy constitute estate property, and that [11 USC 704(a)(1)] grants the bankruptcy trustee the authority to pursue such causes of action." *In re RCS Engineered Products Co, Inc*, 102 F3d 223, 225 (CA 6, 1996) (emphasis added). The question whether a particular cause of action is available to a debtor, thereby constituting property of the estate under 11 USC 704(a)(1) and 11 USC 541(a)(1), is determined by applicable state law. *RCS Engineered, supra* at 225, citing *Butner v United States*, 440 US 48; 99 S Ct 914; 59 L Ed 2d 136 (1979).

In *Kalb, Voorhis & Co v American Financial Corp*, 8 F3d 130, 132 (CA 2, 1993), the federal court stated:

> The initial inquiry herein is whether a claim alleging that the debtor or bankrupt is the alter ego of its controlling stockholder constitutes "property" of the bankruptcy estate or debtor-in-possession within the scope of [11 USC 541(a)]. Property of the estate does not belong to any individual creditor. If under governing state law the debtor could have asserted an alter ego claim to pierce its own corporate veil, that claim constitutes property of the bankrupt estate and can only be asserted by the trustee or the debtor-in-possession. As this Court stated:

> \* \* \*

> "... If a claim is a general one, with no particularized injury arising from it, and if that claim could be brought by

any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee's action." [Citation omitted.]

If an alter ego claim is indeed the property of a bankruptcy estate, the trustee has full authority over the claim, and before a creditor may pursue such a claim, there must be a judicial determination that the trustee has abandoned the claim. *Steyr-Daimler-Puch of America Corp v Pappas*, 852 F2d 132, 136 (CA 4, 1988). Without an abandonment determination, a creditor cannot pursue an alter ego claim. *Id.* Alter ego theories cannot be pursued by anyone other than a chapter 7 trustee in the absence of abandonment or the grant of derivative standing. *In re Charles Edwards Enterprises, Inc*, 344 BR 788, 790 (ND W Va, 2006).[13]

We now turn to the issue whether, under Michigan law, the debtor Con-Lighting, and thus the trustee, could have asserted a claim to pierce Con-Lighting's own corporate veil in the chapter 7 bankruptcy proceedings. We conclude that *RCS Engineered* commands us to conclude that the answer is no, given a lack of subsequent authority to the contrary. In *RCS Engineered*, the court addressed an alter ego claim and a bankruptcy trustee's standing to assert the claim against a parent corporation under the "property of the estate" provisions in 11 USC 704 and 11 USC 541. The court ruled, "A review of Michigan alter ego cases and basic principles of the law of corporations leads us to conclude . . . that under Michigan law a subsidiary does

---

[13] Generally speaking, courts that allow a trustee or debtor to bring an alter ego claim do so under 11 USC 541. *In re Icarus Holding, LLC*, 391 F3d 1315, 1319 (CA 11, 2004) (citing precedent from the Second, Fifth, and Seventh circuits). Following the lead of many other courts, the Eleventh Circuit has held that in order for a trustee to bring an alter ego claim, the claim should be (1) a general claim that is common to all the debtor's creditors and (2) allowable under state law. *Id.* at 1319-1320.

not have standing to sue its shareholders or its parent company under an alter ego theory." *RCS Engineered, supra* at 226. Rather, "courts apply the alter ego theory and disregard a company's separate corporate identity for the benefit of third parties, *e.g.*, creditors of the corporation, who would suffer an unjust loss or injury unless the shareholders or the parent corporation were held liable for the subsidiary's debts." *Id.* The court held:

> Since a subsidiary may not bring an alter ego claim against its parent company under Michigan law, the claim does not become the property of the estate under [11 USC 541(a)(1)] of the Bankruptcy Code when the subsidiary files a petition for bankruptcy. Accordingly, the subsidiary's bankruptcy trustee may not bring an alter ego claim under [11 USC 704(1)] of the Code. Thus, we conclude that the bankruptcy court erred in holding that ... [the] bankruptcy trustee ha[d] standing under these sections to assert an alter ego claim ...." [*Id.* at 227.]

We agree with defendants' assertion that Con-Lighting was not technically a subsidiary, which has been defined as a company with more than half of its stock owned by another company, because Con-Plastics held only a 49 percent interest. See *Liggett Group, Inc v Ace Prop & Cas Ins Co*, 798 A2d 1024, 1035 (Del, 2002). However, although *RCS Engineered* spoke at times in terms of subsidiaries, it also used very broad language at other times, stating that "[t]he general rule is that the corporate veil is pierced only for the benefit of third parties, and never for the benefit of the corporation or its stockholders," and that "[t]here is simply nothing in the cases to suggest that Michigan courts would allow an alter ego claim to be brought in other than third-party situations." *RCS Engineered, supra* at 226-227. Moreover, the United States District Court for the Eastern District of Michigan has relied on *RCS Engi-*

*neered* in disallowing a trustee to pursue an alter ego claim, stating that alter ego claims not involving third-party situations are not recognized in Michigan. *Nieto v Unitron, LP*, 2006 US Dist LEXIS 54443, unreported opinion of the United States District Court for the Eastern District of Michigan, Southern Division, issued August 7, 2006 (Docket No. 06-11966).[14] Furthermore, in *Rymal v Baergen*, 262 Mich App 274, 293; 686 NW2d 241 (2004), this Court stated that " '[t]he traditional basis for piercing the corporate veil has been to *protect a corporation's creditors*[.]' " (Citation omitted; emphasis added.) Accordingly, trustee Shapiro, despite his testimony to the contrary, could not pursue an alter ego theory piercing Con-Lighting's corporate veil because such a claim was not "property of the estate" under Michigan law. Further, because Shapiro did not have the authority to proceed on a theory to pierce Con-Lighting's corporate veil, thereby making the issue of claim abandonment moot, plaintiffs themselves could not have pursued the claim on a derivative basis; nor does there exist an independent basis under the Bankruptcy Code for them to file such a claim against Con-Plastics. Therefore, for purposes of res judicata, it cannot be concluded that plaintiffs could or should have litigated the corporate veil claim in the bankruptcy proceedings. The trial court erred in dismissing this claim or theory on the basis of res judicata arising out of the bankruptcy proceedings. We will later discuss defendants' arguments that the corporate veil claim

---

[14] While *Nieto* is an unreported opinion, it has value because the bankruptcy court at issue here is also from the Eastern District, Southern Division. Therefore, *Nieto* sheds light on the issue whether trustee Shapiro could have pursued the corporate veil claim. Bankruptcy court appeals go to the federal district court for review. 28 USC 158(a); *In re DSC, Ltd*, 486 F3d 940, 943 (CA 6, 2007). And the district court reviews de novo questions of law that had been presented to the bankruptcy court. *In re Gardner*, 360 F3d 551, 557 (CA 6, 2004).

should be summarily dismissed under MCR 2.116(C)(10) and res judicata grounded on the RDM I litigation.

With respect to the successor liability claim, plaintiffs asserted that defendants expressly or implicitly assumed the obligations of Con-Lighting, that the transfer of assets and certain obligations in advance of bankruptcy was fraudulent and undertaken in bad faith to avoid liability to plaintiffs and other Con-Lighting creditors, that Con-Lighting did not receive reasonably equivalent value in return for the asset transfer, and that defendants were engaged in a mere continuation or reincarnation of Con-Lighting's business. Therefore, according to plaintiffs, defendants were liable to plaintiffs for the full amount of Con-Lighting's debts owed to plaintiffs. We initially note that the documentary evidence lends no support for a conclusion that Con-Plastics was Con-Lighting's corporate successor or that it carried on the business operations of Con-Lighting after Con-Lighting ceased operations. Rather, the evidence pointed only to Con-Coatings continuing the business operations previously undertaken by Con-Lighting, although Con-Plastics served as a conduit to some degree. Con-Plastics' role as an alleged successor is tied solely to plaintiffs' allegations concerning the fraudulent transfer of assets; however, we find that this aspect of the successor liability claim was subsumed under the UFTA claim, which was properly dismissed on the basis of res judicata. Thus, Con-Plastics is entitled to summary disposition on this claim under MCR 2.116(C)(10). For the same reasons, we will not permit plaintiffs to pursue any fraudulent transfer allegations against Con-Coatings under the guise of a successor liability claim. Further, there is no evidence that Con-Coatings expressly or implicitly assumed Con-Lighting's lease obligations. Thus, continuity of enter-

prise or operations relative to Con-Coatings is the only basis that could potentially serve to support the successor liability claim. We now proceed with the res judicata analysis of the successor liability claim, as whittled down by us.

We are not aware of any relevant Sixth Circuit precedent on whether a successor liability claim by a predecessor company against a successor company is considered property of the bankruptcy estate, so that a trustee could have pursued a claim in the bankruptcy proceedings. The analytical framework for addressing the successor liability claim is the same as used earlier in this opinion with respect to the corporate veil claim, in that 11 USC 704(a)(1) and 11 USC 541(a)(1) serve as the foundation of the analysis. However, we find it unnecessary to perform a review of Michigan law to determine if a predecessor company, if not yet defunct or dissolved, can sue a successor company.[15] We cannot conclude with any level of confidence, for reasons discussed later in this opinion, that plaintiffs could have pursued a successor liability claim in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division.

Initially, we reject defendants' contention that the successor liability claim, as well as the other claims, all constituted core proceedings that could only be addressed in the bankruptcy court. While the UFTA claim

---

[15] While we have not fully surveyed Michigan caselaw on the matter, we are not aware of anything that would preclude such a lawsuit, although it is typically third parties, e.g., creditors and victims of defective products or negligence, that pursue such suits. See, e.g., *Craig v Oakwood Hosp*, 471 Mich 67; 684 NW2d 296 (2004); *Foster v Cone-Blanchard Machine Co*, 460 Mich 696; 597 NW2d 506 (1999); *Turner v Bituminous Cas Co*, 397 Mich 406; 244 NW2d 873 (1976). And there certainly are bankruptcy courts that have entertained successor liability lawsuits. See, e.g., *In re Sunsport, Inc*, 260 BR 88 (ED Va, 2000).

qualified as a core proceeding, as indicated already in this opinion, the corporate veil and successor liability claims did not. In *Sanders Confectionary, supra* at 483, the Sixth Circuit stated:

> The bankruptcy judge rules on whether a particular proceeding is a core proceeding. 28 U.S.C. § 157(b)(3). The court looks at both the form and the substance of the proceeding in making its determination. . . . A core proceeding either invokes a substantive right created by federal bankruptcy law or one which could not exist outside of the bankruptcy . . . . In non-core proceedings that are "related to" the bankruptcy case, the bankruptcy judge may hear the matter and "submit proposed findings of fact and conclusions of law to the district court," but without the parties consent the bankruptcy court may not make a final decision on the matter. 28 U.S.C. § 157(c).

Successor liability and alter ego claims are not core proceedings because they are not claims against the assets of the estate and they do not deal with the relationship between a debtor and its creditors, but instead target the assets of a nondebtor. *In re G-I Holdings, Inc*, 295 BR 211, 217 (D NJ, 2003). "Case law dealing with bankruptcy litigation of successor liability and veil piercing issues confirms that this action is not a core proceeding." *Id.*; see also *Phar-Mor, Inc v Coopers & Lybrand*, 22 F3d 1228, 1239 (CA 3, 1994); *In re Julien Co*, 120 BR 930, 937 (WD Tenn, 1990) ("veil piercing or *alter ego* theory could not be a core proceeding"); but cf. *Central Vermont Pub Service Corp v Herbert*, 341 F3d 186, 192 (CA 2, 2003). A successor liability claim can exist outside bankruptcy, it is not created by the Bankruptcy Code, and it does not require resort to concepts peculiar to bankruptcy for resolution; therefore, it is not a core proceeding. *G-I Holdings, supra* at 217. At best, plaintiffs' successor liability and corporate veil claims were related to the bankruptcy case. Accordingly,

defendants' arguments that the successor liability and
corporate veil claims entailed core proceedings and that
they had to be litigated in the bankruptcy court lack
merit.[16] Furthermore, pursuant to 28 USC 1334(b),
which governs jurisdiction in bankruptcy cases, bank-
ruptcy courts have full and exclusive jurisdiction over
the bankruptcy case itself, but they lack sole and
exclusive jurisdiction over civil proceedings, including
core proceedings. *In re Lenke*, 249 BR 1, 6 n 4 (D Ariz,
2000). "The bankruptcy court has original but not
exclusive jurisdiction over fraudulent transfer claims."
*In re Int'l Admin Services, Inc*, 211 BR 88, 95 n 4 (MD
Fla, 1997).

The caselaw is split with respect to whether res
judicata attaches to a non-core proceeding. Some of the
cases rejecting the application of res judicata to non-
core proceedings are *Barnett v Stern*, 909 F2d 973, 979
(CA 7, 1990) (district court claim by creditor only
barred by res judicata if the claim would have been a
core proceeding in bankruptcy), *Howell Hydrocarbons,
Inc v Adams*, 897 F2d 183, 190 (CA 5, 1990), and
*SMI/USA, Inc v Profile Technologies, Inc*, 38 SW3d 205,
211 (Tex App, 2001) (disposition of non-core proceed-
ings in bankruptcy "is not res judicata as to subsequent
state court proceedings regarding the same claims").
The Sixth Circuit, however, allows imposition of res
judicata in regard to non-core proceedings. *Sanders
Confectionary, supra* at 483 (even though bankruptcy
court may not be able to issue a final decision, federal
district court has the authority to do so). In *Cabrera v
First Nat'l Bank of Wheaton*, 324 Ill App 3d 85, 97; 753

---

[16] We note that the mere fact that the UFTA claim was a core
proceeding does not mean that the non-core successor liability claim
becomes a core proceeding. *In re Exide Technologies*, 544 F3d 196, 206
(CA 3, 2008).

NE2d 1138 (2001), the Illinois Appellate Court, with supporting citations, observed that "[s]everal federal circuits reject the distinction between core and noncore claims for the purpose of *res judicata*," generally because the bankruptcy judge and the district court can together provide full and fair litigation of a non-core claim. The *Cabrera* court also noted that a legal commentator has charged that the courts rejecting application of res judicata to non-core proceedings demonstrate confusion between jurisdiction and power. *Id.* "It thus appears that the position of the Fifth and Seventh Circuits has been widely rejected, with the opposite view holding prominence in the federal courts." *Id.*

We decline to become embroiled in this debate for a very practical reason, which is the unreported opinion of *Nieto* by the United States District Court for the Eastern District of Michigan, Southern Division, issued in 2006, the same year that the bankruptcy case here was closed. In *Nieto*, Unitron, Inc., filed for chapter 7 bankruptcy, claiming that it had $12,000 in assets and in excess of $300,000 in liabilities. At the same time the bankruptcy petition was filed, Unitron, LP, unilaterally terminated vested benefits of former employees of a Unitron plant in Troy. The employees and their union filed suit in the district court against Unitron, LP, alleging that it was a "disguised continuance and the alter ego" of Unitron, Inc., where they had "substantially identical management, business, purpose, operation, equipment, customers, supervision and ownership." *Nieto*, *supra* at *5-6. The court addressed the issue whether the plaintiffs had standing to pursue their claims in district court or whether the claims had to be pursued by the trustee in the bankruptcy proceedings involving Unitron, Inc. The court noted that the parties agreed that the " 'property of the estate' " did not belong to any individual creditor. *Id.* at *13 (citation

omitted). The court, relying on *RCS Engineered*, held that the claims were not property of the estate under 11 USC 541(a)(1), that the trustee thus did not have standing to pursue the claims, and that therefore the automatic stay provision of the Bankruptcy Code did not operate as a bar to the plaintiffs' lawsuit in district court. *Id*. at *21-22.

Regardless of the fact that *Nieto* was unreported, and without commenting on the correctness of the ruling, it certainly provides some insight into how a bankruptcy court in that same federal district and division may have handled an attempt to pursue a successor liability claim by trustee Shapiro. We cannot in good faith rule that a successor liability claim should and could have been pursued and fully litigated in the bankruptcy court when the district court in that jurisdiction has rejected a nearly identical claim.

### E. ELEMENT 4: IDENTITY OF THE CAUSES OF ACTION

Finally, we examine the fourth element of res judicata, which requires an identity of the causes of action. Given the rulings we made earlier, only the fraudulent conveyance claim remains relevant. We first conclude that plaintiffs have failed to address this element. Moreover, this element is satisfied if the claims arose out of the same transaction or same series of transactions, or if the claims arose out of the same core operative facts. *Winget, supra* at 580. "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." *I A Durbin, Inc v Jefferson Nat'l Bank*, 793 F2d 1541, 1549 (CA 11, 1986). Here, of course, no claims were raised in the bankruptcy court. It would be incorrect, however, to conclude that because the particular claims were not raised in the bankruptcy proceedings, no

identity of claims exists. *Sanders Confectionary, supra* at 483-484. Instead, "[i]dentity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.' " *Id.* at 484, quoting *Westwood Chem Co v Kulick*, 656 F2d 1224, 1227 (CA 6, 1981). Had plaintiffs raised the fraudulent conveyance claim in the bankruptcy proceedings, as they should have done, the claim would have arisen out of the same transaction and core operative facts giving rise to the claim contained in RDM II; the substance of the actions would be identical. Accordingly, the fourth element of res judicata was satisfied. Therefore, defendants were entitled to summary disposition with respect to the fraudulent conveyance claim on the basis of res judicata grounded on the bankruptcy proceedings.

### VI. RES JUDICATA GROUNDED ON RDM I

Defendants present a cursory argument that plaintiffs' claims are barred by res judicata grounded on the RDM I lawsuit. In *Dart v Dart*, 460 Mich 573, 586; 597 NW2d 82 (1999), our Supreme Court stated:

> Res judicata bars a subsequent action between the same parties when the evidence or essential facts are identical. A second action is barred when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. [Citations omitted.]

Here, although an order granting partial summary disposition in favor of RDM was entered, the case was left open and hanging in limbo by the filing of Con-Lighting's bankruptcy petition and the entry of a stay. Moreover, the evidence or essential facts in RDM I dealt only with the alleged lease breaches in connection with

the Merrill Road property, and while those breaches formed part of the RDM II litigation, the evidence and essential facts related to the successor liability and corporate veil claims were not identical to those in RDM I and they developed later in time and required exposure through the discovery process. Further, Chestnut was not a party to the RDM I lawsuit, nor were defendants before the bankruptcy stay or before the RDM II suit was filed.[17] Additionally, defendants' assertion that they were "putative privies" is not a claim that they were actual privies for purposes of res judicata and is instead, effectively, a contention that they were not privies.

Defendants' argument is more in the nature of a claim that they should have been joined as parties in RDM I and that plaintiffs, upon joinder, should have litigated the successor liability, fraudulent conveyance, and corporate veil claims. Such an argument is not one of res judicata, but necessary joinder under MCR 2.205, which we find was not implicated under the circumstances presented.

### VII. MCR 2.116(C)(10): PIERCING OF THE CORPORATE VEIL AND SUCCESSOR LIABILITY

We conclude that issues of fact abound in regard to the corporate veil and successor liability claims. We first

---

[17] Through an unusual procedure, the trial judge in RDM II, who also presided over RDM I, permitted defendants to intervene in RDM I during the pendency of RDM II. The purpose was to give defendants the opportunity to seeks reconsideration of the order granting partial summary disposition in RDM I. The trial court denied reconsideration. To the extent that this occurrence made them "parties" to the RDM I lawsuit, no further litigation or rulings took place in RDM I, and we are not prepared to hold that res judicata was implicated merely by this quirky procedural step. Furthermore, when they became "parties" to RDM I, they were already parties to the RDM II lawsuit.

address plaintiffs' claim seeking to pierce the corporate veil. "The law treats a corporation as an entirely separate entity from its shareholders, even where one individual owns all the corporation's stock." *Rymal, supra* at 293. However, as explained in *Rymal, id.* at 293-294, the protection afforded by the corporate veil can be pierced under certain circumstances:

> "The traditional basis for piercing the corporate veil has been to protect a corporation's creditors where there is a unity of interest of the stockholders and the corporation and where the stockholders have used the corporate structure in an attempt to avoid legal obligations." . . .

> For the corporate veil to be pierced, the corporate entity must be a mere instrumentality of another individual or entity. Further, the corporate entity must have been used to commit a wrong or fraud. Additionally, and finally, there must have been an unjust injury or loss to the plaintiff. There is no single rule delineating when a corporate entity should be disregarded, and the facts are to be assessed in light of a corporation's economic justification to determine if the corporate form has been abused. [Citations omitted.]

Here, there was documentary evidence that Con-Plastics, a 49 percent owner of Con-Lighting, and its president, Anthony Catenacci, fully controlled every aspect of the operations at Con-Lighting, including the decision to cease operations and file for bankruptcy to the detriment of numerous creditors. Gregory Eaton testified that, despite an operating agreement indicating that he had provided $204,000 for his 51 percent interest in Con-Lighting, he never paid any money for his interest. Rather, the funds were "loaned" to him by either Con-Plastics or Catenacci; however, there was no loan agreement, Eaton never paid any money toward the loan, and no one ever asked Eaton to repay the loan. Eaton testified that he had no knowledge of the Comerica assignment or the surrender agreement. He did

not make the decision to cease Con-Lighting's operations or to file for bankruptcy, nor did he authorize anyone to make those decisions on his behalf. Further, Eaton did not have any involvement in shifting property or operations from Con-Lighting to Con-Coatings. Catenacci testified that he made the decision to shutter operations. The evidence suggested that Eaton was a mere figurehead placed in the position solely to allow Con-Lighting to claim minority-ownership status.

Additionally, documentary evidence was presented showing that Con-Plastics had loaned millions of dollars to Con-Lighting and its predecessors over the years to keep the business operating and afloat, despite the fact that the enterprise continued to lose money. There was evidence that Con-Lighting did not honor various lease obligations, although the decision to cease operations had already been made and a plan conceived to convert operations to Con-Coatings.[18] There was evidence that Con-Lighting equipment started to be moved out in September or October 2004 and found its way to Con-Coatings, which had hired several Con-Lighting employees in mid-October, even though evidence also showed that Con-Lighting benefited by remaining on the Merrill Road property past the lease expiration date, implicating the holdover provision and payment obligation. This could be viewed as wrongfully taking advantage of the corporate entity, whose life was coming to an end with bankruptcy on the horizon, to the detriment of plaintiffs.

---

[18] The record contains several documents generated by GM referencing contracts and stating under the heading "line item notes":

> Purchase order is being issued per request from John Lowe, Continental Lighting, dated 8/19/04 to transfer business from . . . Continental Lighting to Continental Coatings.

In sum, there was sufficient documentary evidence to create an issue of fact regarding whether Con-Lighting was a mere instrumentality of Con-Plastics, whether the corporate entity of Con-Lighting was used to commit a wrong or fraud, and whether there was an unjust injury or loss to plaintiffs. Con-Plastics was not entitled to summary disposition under MCR 2.116(C)(10) with respect to the corporate veil claim.[19]

With respect to the successor liability claim against Con-Coatings, our Supreme Court explained the theory in *Foster v Cone-Blanchard Machine Co*, 460 Mich 696, 702-704; 597 NW2d 506 (1999):

> The traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. The five exceptions are as follows:
>
> "(1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation."

* * *

---

[19] We do wish to emphasize that, in light of our ruling that the UFTA claim should have been litigated in the bankruptcy proceedings and is thus barred, plaintiffs are not permitted to claim a fraudulent conveyance arising out of the surrender agreement as evidence in support of piercing the corporate veil. This applies equally to the successor liability claim.

[P]olicy concerns shaped this Court's expansion of the traditional rule in *Turner* [*v Bituminous Cas Co*, 397 Mich 406; 244 NW2d 873 (1976)]. After examining the relevant policy concerns, this Court in *Turner* concluded that a continuity of enterprise between a successor and its predecessor may force a successor to "accept the liability with the benefits" of such continuity. *Turner* held that a prima facie case of continuity of enterprise exists where the plaintiff establishes the following facts: (1) there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. *Turner* identified as an additional principle relevant to determining successor liability, whether the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation. [Citations and some quotation marks omitted.]

As indicated earlier in this opinion, the continuing enterprise theory (mere continuation or reincarnation of the old corporation) is the only theory that can be pursued by plaintiffs at trial. Much of the evidence discussed above in relation to the corporate veil claim is equally relevant to the successor liability claim. There was documentary evidence reflecting a continuity of management, personnel, assets, and general business operations.[20] There was also evidence that Con-Lighting ceased operations around the time of the changeover to

---

[20] Con-Lighting president Kenneth Lamb became a manufacturing manager for Con-Coatings, John Lowe, a plant manager for Con-Lighting, became a manager for Con-Coatings, and other former Con-Lighting personnel became employed by Con-Coatings. Much of Con-Lighting's equipment flowed to Con-Coatings.

Con-Coatings, or the plan to so proceed, and sought liquidation in chapter 7 bankruptcy proceedings soon thereafter. Eaton testified that Con-Lighting customers, chiefly GM and DaimlerChrysler, communicated concerns about obligations being satisfied and that Kenneth Lamb and John Lowe worked on alleviating those concerns. There was evidence that GM and DaimlerChrysler began sourcing or procuring parts from Con-Coatings that had previously been provided by Con-Lighting.[21] There was evidence that Con-Lighting's suppliers started supplying Con-Coatings and that Con-Coatings's books showed a dramatic increase in gross receipts in 2005, at least partly attributable to business generated by GM and DaimlerChrysler purchasing parts from Con-Coatings. A reasonable juror could surmise from the evidence that Con-Coatings was holding itself out to the world as the effective continuation of Con-Lighting. In sum, a genuine issue of material fact exists whether Con-Coatings can be held liable under a successor liability theory.[22]

---

[21] John Lowe testified that he met several times with GM and DaimlerChrysler personnel about Con-Lighting shutting down production. Kenneth Lamb and others were also present at these meetings, which took place between August and October 2004. Lowe indicated that there was a general goal or plan that Con-Lighting's equipment and operations would eventually move or be resourced to Con-Coatings. Lowe conceded that, at some point, some of Con-Lighting's equipment and business did indeed end up at Con-Coatings. Equipment started to be moved in either September or October 2004. Lowe indicated that Con-Lighting had about 50 to 70 purchase orders in 2004 and was manufacturing 30 different parts at the time. According to Lowe, GM and DaimlerChrysler "approved the resource of all of the business that Continental Lighting had over to Continental Coatings." Lowe stated that GM had not previously done business with Con-Coatings and that he had to obtain a DUNS (identification) number for Con-Coatings. Lowe testified that on customer approval, contracts were issued to Con-Coatings.

[22] Of course, plaintiffs must also prove the underlying allegations regarding the lease breaches.

VIII. CONCLUSION

The trial court did not err in dismissing the UFTA claim on the basis of res judicata with respect to both defendants. The trial court, however, did err in dismissing the corporate veil and successor liability claims on the basis of res judicata grounded on the bankruptcy proceedings. Neither defendant is entitled to summary disposition on the basis of res judicata grounded on the RDM I lawsuit. Defendant Con-Coatings is entitled to summary disposition under MCR 2.116(C)(8) and (10) in regard to the corporate veil claim. Defendant Con-Plastics is entitled to summary disposition under MCR 2.116(C)(10) in regard to the successor liability claim. Finally, there are genuine issues of material fact with respect to the successor liability claim against Con-Coatings and in regard to the corporate veil claim against Con-Plastics.

Accordingly, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.