COWEN, Circuit Judge,
dissenting.
I agree with the Bankruptcy Court that the Diacetyl Plaintiffs’ claims against Aa-roma constitute “individualized claims” belonging to the Diacetyl Plaintiffs themselves. Because the majority instead concludes that such claims are “generalized claims” belonging to the bankruptcy estate, I must respectfully dissent.
*883 It is undisputed that “creditors lack standing to assert claims that are ‘property of the estate.’ ” Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc., 296 F.3d 164, 169 (3d Cir.2002). A cause of action or claim, in order to be considered property of the estate, “must be a ‘general one, with no particularized injury arising from it.’ ” Id. at 170 (quoting St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc., 884 F.2d 688, 701 (2d Cir.1989)). “[W]here a claim ‘is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor, the trustee is the proper person to assert the claim, and the creditors are bound by the outcome of the trustee’s action.’ ” (Majority Opinion at 879 (quoting St. Paul, 884 F.2d at 701); see also id. at 879 (quoting Foodtown, 296 F.3d at 170).) “On the other hand, if the claim is specific to the creditor, it is a ‘personal’ one and is a legal or equitable interest only of the creditor.” Id.
Because the Diacetyl Plaintiffs’ against Aaroma “could [not] be brought by any creditor of the debtor,” they constitute individualized claims belonging to the Dia-cetyl Plaintiffs themselves — and not to the debtor or the bankruptcy estate. Initially, it is uncontested that the underlying personal injury claims against Emoral are individualized in nature. In fact, personal injury and product liability causes of action under state law represent quintessential examples of an individualized claim, i.e., “a ‘personal’ [claim that is] a legal or equitable interest only of the creditor.” Id. The majority insists that “we cannot ignore the fact ... that [the Diacetyl Plaintiffs’] only theory of liability as against Aaroma, a third party that is not alleged to have caused any direct injury to the Diacetyl Plaintiffs, is that, as a matter of state law, Aaroma constitutes a ‘mere continuation’ of Emoral such that it has also succeeded to all of Emoral’s liabilities.” (Id. at 8-9 (emphasis omitted).) Nevertheless, the Court also cannot ignore the claims or allegations underlying this theory or remedy of successor liability. As the Bankruptcy Court explained in its thorough and well-reasoned ruling, “the underlying injury that is alleged to be the basis and premise of the state court actions is personal harm by exposure to Diacetyl by the individual plaintiffs or harm to the individual plaintiffs.” (A1387.) The successor liability theory alleged by the Diacetyl Plaintiffs is inextricably tied to — and cannot be considered separate or apart from — their underlying personal injury and product liability allegations. Because the Diacetyl Plaintiffs’ underlying allegations are clearly individualized in nature, their claims against Aaroma — which seek to hold this third party liable for their alleged injuries as the “mere continuation” of Emoral — must also be considered as individualized claims. In short, “any creditor of the debtor” could not allege that the third party should be held responsible on this specific theory of successor liability for injuries allegedly suffered as a result of exposure to a product made and sold by the debtor itself. For instance, a trade creditor of the debtor could not make such a claim.
I believe that the prior case law, beginning with our own ruling in Foodtown, weighs in favor of this approach to the Diacetyl Plaintiffs’ claims.
“In Foodtown, a plaintiff pension fund sought to recover $9.3 million in ERISA withdrawal liability owed by the debtor [Twin] to the pension fund by bringing an alter ego veil-piercing claim and claims for breach of fiduciary duty against third parties.” (Majority Opinion at 13.) This Court determined that “Twin’s withdrawal liability is not property of the estate” because “the claim did not arise until after *884 the filing of the bankruptcy petition.” Foodtown, 296 F.3d at 170 (footnote omitted). We, however, did not stop there. On the contrary, we went on to conclude that “[t]he claim for withdrawal liability is also not a legal or equitable interest of the debtor.” Id.; cf., e.g., Philadelphia Marine Trade Ass’n — Int’l Longshoremen’s Ass’n Pension Fund v. Comm’r of Internal Revenue, 523 F.3d 140, 147 n. 5 (3d Cir.2008) (“We note that this portion of the opinion is an alternative holding, not a dictum: Where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum.’” (quoting Woods v. Interstate Realty Co., 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949))). In doing so, the Foodtown Court specifically focused on the creditor’s underlying withdrawal liability allegations, referring, for example, to “Twin’s withdrawal liability” and “Appellees’ evasion of withdrawal liability.” Foodtown, 296 F.3d at 170. The alleged evasion of liability, in turn, did not injure either Twin or the creditors in general:
In this case, the injury is not insolvency stemming from Appellees’ actions. Here, the injury is the Appellees’ evasion of withdrawal liability. Withdrawal liability is not owed to Twin; rather, it is owed to the pension fund. Because the liability is owed only to the fund, the claim is personal to the Appellant. Moreover, absent a general creditors’ interest, a trustee can only collect money that may be owing to the bankrupt entity. Here, there is no general creditors’ interest in the statutorily imposed withdrawal liability owed to the fund. Rather, the action to recover the withdrawal liability has the character of an action for damages flowing from an alleged illegality against the fund. The alleged illegality may have caused other injuries in addition to those caused to the fund, but the direct injury to the fund — the evasion of its statutory entitlement — defines the nature of plaintiffs claim as a personal one....
Id. (citing Steinberg v. Buczynski, 40 F.3d 890, 892 (7th Cir.1994); Apostolou v. Fisher, 188 B.R. 958, 968 (N.D.Ill.1995)). In fact, we did not specifically address the elements of the pension fund’s alter ego and veil piercing causes of action until we considered the claims on their merits, after concluding that this creditor had standing to pursue such claims in the first place. See id. at 167-73. Likewise, even though our opinion in Foodtown referred to a federal interest in disregarding the corporate form in ERISA and MPPAA cases, id. at 169, we actually applied New Jersey law to conclude that the creditor stated claims for alter ego liability and for piercing the corporate veil, id. at 171-73.
We thereby adopted in Foodtown an expansive approach to the question of whether a creditor’s cause of action against a third party constitutes an individualized claim and, at the very least, exhibited a preference for allowing a third party claim to be decided on the merits. As a practical matter, I do not see how the same court that was willing to permit the pension fund’s third party claims to go forward could reach the opposite result with respect to the Diacetyl Plaintiffs’ own third party claims against Aaroma. Just as we relied on the individualized nature of the underlying withdrawal liability allegations to permit a creditor to pursue its claims against several third parties, we likewise should allow the Diacetyl Plaintiffs’ claims against Aaroma to go forward given the individualized nature of their own underlying personal injury and product liability allegations.
The Court in Foodtown turned for support to the Seventh Circuit’s opinion in Steinberg, which addressed what we called “a similar case.” Id. at 171. The Stein- *885 berg court determined that a bankruptcy trustee lacked standing to pursue an adversary proceeding against the debtor’s shareholders “seeking to pierce the corporate veil and hold them personally liable for the corporation’s debt to the pension fund,” where the pension fund had already obtained a monetary judgment against the debtor corporation prior to bankruptcy. Steinberg, W F.Sd at 891. Like Foodtown, the Seventh Circuit’s opinion distinguished between the claims of the debtor corporation and the claims belonging to its creditor pension fund:
The point is simply that the trustee is confined to enforcing entitlements of the corporation. He has no right to enforce entitlements of a creditor. He represents the unsecured creditors of the corporation; and in that sense when he is suing on behalf of the corporation he is really suing on behalf of the creditors of the corporation. But there is a difference between a creditor’s interest in the claims of the corporation against a third party, which are enforced by the trustee, and the creditor’s own direct — not derivative — claim against the third party, which only the creditor himself can enforce ....
Id. at 893. A trustee has standing to pursue an action to pierce the corporate veil on behalf of the bankrupt corporation only if the corporation was injured by the shareholders’ disregard of corporate formalities. Id. at 892; see also, e.g., Foodtown, 296 F.3d at 170-71 (citing Steinberg ). I do not see how Aaroma’s alleged “mere continuation” of Emoral could have harmed Emoral itself. To paraphrase Foodtown, “the injury [alleged by the Dia-cetyl Plaintiffs] is not insolvency stemming from [Aaroma’s] actions.” Foodtown, 296 F.3d at 170.
The Second Circuit recently considered the question of standing in In re Bernard L. Madoff Investment Securities LLC, 721 F.3d 54 (2d Cir.2013), petition for cert. filed, 82 U.S.L.W. 3264 (U.S. Oct. 9, 2013). A trustee appointed under the Securities Investor Protection Act sought to bring claims on behalf of the victims of a multi-billion-dollar Ponzi scheme against several financial institutions for their alleged role in this fraudulent scheme. Madoff, 721 F.3d at 57-58. The trustee focused on “a passage in St. Paul — -stating that a trustee may bring a claim if the ‘claim is a general one, with no particularized injury arising from it, and if that claim could be brought by any creditor of the debtor’ ” — and asserted that “the third-party claims here are common to all customers because all customers were similarly injured by Ma-doffs fraud and the Defendants’ facilitation.” Id. at 70 (quoting St. Paul, 884 F.2d at 701). The Second Circuit nevertheless determined that the trustee’s theory “is flawed on many levels.” Id. Relying, inter alia, on the Seventh Circuit’s reasoning in Steinberg, the Madoff court thereby rejected the trustee’s “broad reading” of St. Paul. Id. at 70-71. “As illustrated by St. Paul, when a creditor seeks relief against third parties that pushed the debtor into bankruptcy, the creditor is asserting a derivative claim that arises from harm done to the estate” and that accordingly belongs to the bankruptcy estate. Id. at 70. In addition, the Madoff trustee “seeks to assert claims on behalf of thousands of customers against third-party financial institutions for their handling of individual investments made on various dates in varying amounts,” id. at 71. Because these alleged wrongful acts could not have harmed all of the customers in the same way, the claims could not be considered to be “common” or “general” in nature.[1] Id.
*886 The majority admits that “we leave the Diacetyl Plaintiffs, who allege that they have suffered serious personal injuries resulting from exposure to a harmful chemical, albeit not at the hands of Aaroma, with no apparent recourse against Aaro-ma.” (Id. at 14.) I do not believe that either federal bankruptcy law or state law mandates such a drastic and harsh result. After all, the plaintiffs in this case are not trade creditors seeking to recover from the successor a specific amount of money owed by the debtor; they are men and women allegedly suffering from severe lung problems caused by exposure to a chemical made and sold by the debtor. Their state law claims accordingly implicate important state interests, such as providing adequate compensation to individuals seriously injured by defective products. Cf., e.g., Foodtown, 296 F.Bd at 169 (“With regard to alter ego liability in cases involving claims to pension benefits protected by ERISA, as amended by the MPPAA, there is ‘a federal interest supporting disregard of the corporate form to impose liability.’ ” (quoting Lumpkin v. Envirodyne Indus., Inc., 933 F.2d 449, 460-61 (7th Cir.1991))). The Diacetyl Plaintiffs additionally have not obtained any judgment against Emoral (or Aaroma) for a specified amount, and their claims accordingly have not been denominated. I further note that the Bankruptcy Court granted the Diacetyl Plaintiffs relief from the automatic stay to permit them “to litigate their products liability action against [Emoral] to judgment and to seek recovery from applicable insurance policies insuring the Debtor for their alleged injuries.” (12/11/12 Order at 2.) The Bank- *887 ruptey Court, in turn, ordered that their recovery against Emoral “shall be limited to the extent of the insurance coverage provided to the Debtor and shall be paid from such insurance, if at all, and not from any other assets of the Debtor’s estate.”[2] (Id. at 2-3.) Given the circumstances, it is not surprising that a representative of the Trustee stated, at the hearing held by the Bankruptcy Court to decide whether to approve the Trustee’s $500,000 settlement with Aaroma, that the Diacetyl Plaintiffs’ successor liability claim against Aaroma “does not- belong to the Estate” and that the Trustee accordingly “can’t release it.” (A1277.)
Because the claims against Aaroma belong to the Diacetyl Plaintiffs, the Bankruptcy Court properly determined that “the Diacetyl plaintiffs’ right to assert those claims [was] not affected by the settlement agreement [or] the settlement approval order” (A1388). See, e.g., id. at 175 (“Because Appellant’s cause of action is based on withdrawal liability under ERISA and is not considered property of the estate, Twin’s release does not affect Appellant’s claims.”). For the foregoing reasons, I would vacate the District Court’s order, which reversed the order of the Bankruptcy Court denying Aaroma’s motion to enforce the settlement approval order and to compel dismissal of the Dia-cetyl Plaintiffs’ state court actions against Aaroma, and would remand for further proceedings.

. The majority turns for support to two bankruptcy court decisions that "have held that state law causes of action for successor liability, just as alter ego and veil-piercing causes of action, are properly characterized as property of the bankruptcy estate.” (Majority Opinion at 880.) However, I believe that both opinions — which clearly are not binding on this Court — are distinguishable on a number of different grounds. Unlike our ruling in Food-town, neither Buildings by Jamie nor Keene really looked to the underlying injury or injuries alleged by the creditors. In turn, Buildings by Jamie did not involve either personal injury or product liability claims. The Food-town Court distinguished this New Jersey bankruptcy case because, among other things, “the trustee [in Buildings by Jamie] had standing to pursue an alter ego action on behalf of the corporate debtor to recover on a defaulted loan.” Foodtown, 296 F.3d at 171. “Furthermore, the In re Buildings by Jamie court held, consistent with our decision here, that under New Jersey law an alter ego action is an equitable remedy that may only be asserted by a corporation when it suffers harm.” Id. As the majority acknowledges, the plaintiff creditors actually constituted the entire creditor body in this New Jersey bankruptcy proceeding. Buildings by Jamie, 230 B.R. at 44. I also note that "the plaintiffs’ counsel conceded that the creditors’ claims belonged to the bankruptcy estate and acknowledged, therefore, that the creditors would not be named as co-plaintiffs with the trustee in the adversary complaint.” Id. (citation omitted). For its part, the New York bankruptcy court in Keene construed the creditors' complaints as invoking the "fourth exception” for successor liability, i.e., " 'the transfer of assets is for the fraudulent purpose of escaping liability.' ” Keene, 164 B.R. at 852-53 (citations omitted); see also, e.g., RDM Holdings, Ltd. v. Cont’l Plastics Co., 281 Mich.App. 678, 762 N.W.2d 529, 707 (2008) ("Con-Plastics’ role as an alleged successor is tied solely to plaintiffs’ allegations concerning the fraudulent transfer of assets; however, we find that this aspect of the successor liability claim was subsumed under the UFTA [Uniform Fraudulent Transfer Act] claim, which was properly dismissed on the basis of res judicata.... For the same reasons, we will not permit plaintiffs to pursue any fraudulent transfer allegations against Con-Coatings under the guise of a successor liability claim.”). In any event, I find Keene’s reasoning with respect to successor liability and other third party theories to be at odds with the more liberal approach set forth by this Court in Foodtown.

. I agree with the majority that its holding has no bearing on any remedy the Diacetyl Plaintiffs may have against Emoral the bankruptcy proceeding or against any of the other defendants named in the state court proceedings. Specifically, it appears the Diacetyl Plaintiffs’ insurance proceed claims are currently pending before the New Jersey Superi- or Court, and our ruling today has no effect whatsoever on such claims.